STATE v. JAMES, alias BURTON GRAVES.

It is error on a trial for burglary, for his Honor to charge the jury, that if they believed "from the evidence, that the prisoner was in possession of the watch and chain in Danville, on the Monday after the same had been stolen on the previous Saturday night in Greensboro, the law presumed that he was the thief, and that the prisoner was bound to explain satisfactorily, how he came by the stolen goods."

The rule is, where goods are stolen, and found in possession so soon thereafter, that he could not reasonably have got the possession unless he had stolen them himself, the law presumes he was the thief.

(Pearce v. Lea, 68 N. C. Rep. 90, cited and approved.)

INDICTMENT for burglary, tried before Kerr, J., at December Term, 1874, GUILFORD Superior Court.

The burglary alleged was the breaking into and entering the house of J. I. Scales, in the city of Greensboro', N. C., on the night of the 8th of August. with the intent to steal, and stealing and carrying away a watch and chain, the property of J. I. Scales.

There was evidence tending to prove that between nine o'clock on that night and two o'clock A. M. of the 9th of August, Mr. Scale's house was entered by some one forcing open the blinds and raising the window sash of a room called the nursery, that between that room and the bedchamber was the dining room, that a lamp was left burning in the dining room from which a light shown into both the nursery and bedchamber. That Scales went to bed about 9 o'clock and hung his coat and vest on the back of a chair in his bed room, the watch being in the vest pocket and attached thereto by the chain.

That Jennie Stevens, a colored servant girl, was in the house when Scales went to bed, at what time she left the house was not shown, further than that she left during the night and went to her usual place of sleeping.

It was farther in evidence that the prisoner was in Danville, in the State of Virginia, on the 10th of August, and had the

watch and chain in his possession, and swapped them off for another watch and chain, getting boot.

It was in evidence that the prisoner was in Rockingham county on the 6th of August at the election, and also on the night of the sixth, and that he said on that night that he was going to Greensboro the next day and did leave the house at which he was stopping the next day.

There was no evidence that he was in Greensboro on the night in which the alleged burglary was committed.

The prisoner was arrested about the 4th of September in Rockingham and brought to Greensboro jail.    When arrested the prisoner denied the charge.

When in prison the prisoner told Scales that he got the watch and chain from John and Dennis Sellars on Sunday night the 9th of August, and that they got him to take them to Danville and trade them off.    The prisoner at first told Scales that he did not know the watch, but in a few minutes afterwards admitted that he did know the watch as soon as he saw it, that he had seen Scales wear it a hundred times.

It was proven that the prisoner, preceding and up to July, had been a servant of Scales and often in his house and the rooms thereof.    That on the first or second day after the watch was stolen, Scales had Jennie Stevens, his servant, and one Jim Edwell, arrested on the charge of committing the crime. That on the night of the alleged burglary Jim Edwell was seen about dark dodging behind a tree at the corner of the house, near the window alleged to have been broken open.    That he was halted by a servant man twice before he did so, near the front gate of the residence of Scales.    That some hour or two afterwards this servant and Jennie Stevens went out of the front gate and saw Edwell alone again passing, that he walked before them a half mile and Jennie Stevens had a conversation with him which the witness did not hear.    That Jennie Stevens had a small bundle which she gave to witness to hold while she talked with Edwell. That about an hour afterwards witness

saw Edwell in about one hundred yards of Scales' house talking to a colored man.

It was also in evidence that when the prisoner had the watch in his possession and was offering to exchange it for another, he said that he had bought it of a broker for $40, and in a few minutes he told another person that he gave $48 for it, and said that he made a mistake when he said he gave $40. It was also shown that when the prisoner was arrested he was concealed under a bed, and had tried to escape up a chimney.

His Honor, among other things, charged the jury that if they believed from the evidence that the prisoner was in the possession of the watch and chain in Danville, Virginia, on the Monday after the watch was stolen on Saturday night, the law presumed that he was the thief and that he was bound to explain satisfactorily to them how he came by it.

The prisoner excepted. The prisoner's counsel asked his Honor to charge "that if there was any reasonable hypothesis arising out of or suggested by the evidence by which taking all the facts proven to be true and he not guilty, that the jury should acquit the prisoner." His Honor charged the jury that in giving to the prisoner the benefit of the reasonable doubt, they should not be controlled by mere conjecture that some one else did the deed, that they must be fully satisfied that the prisoner did the deed." Prisoner excepted.

There was a verdict of guilty, rule discharged, judgment of death pronounced, and the prisoner appealed.

*Scott & Caldwell,* for the defendant.
*Attorney General Hargrove,* for the State.

PEARSON, C. J. The fact that the " watch and chain " were found in the possession of the prisoner, at Danville, on the Monday after the burglary on the Saturday night preceding, at Greensboro', connected with the fact that he was offering to dispose of the articles at much less than their value, and made contradictory statements as to how he got them, were matters

tending to show either that the prisoner was the man who broke and entered the dwelling house and stole the watch and chain, or else that he had received the goods, knowing them to have been stolen.    These facts, taken in connection with the evidence of the mysterious movements of Jim Edwell and Jennie Stevens, about the premises on the night of the burglary, were fit subjects for the consideration of the jury.

His Honor committed manifest error in taking the case from the jury, and ruling that "if the jury believed from the evidence that the prisoner was in possession of the watch and chain in Danville on the Monday after the watch and chain was stolen on Saturday night in Greensboro, *the law presumed he was the thief*, and had stolen the watch and chain, and that the prisoner was bound to explain satisfactorily how he came by the goods."    The rule is this : " When goods are stolen, one found in possession so soon thereafter, that he could *not have reasonably got the possession unless* he had stolen them himself, *the law presumes* he was the thief."    This is simply a deduction of common sense, and when the fact is so plain that there can be no mistake about it, our Courts, following the practice in England, where the Judge is allowed to express his opinion as to the weight of the evidence, have adopted it as a rule of law, which the Judge is at liberty to act on, notwithstanding the statute, which forbids a Judge from intimating an opinion as to the weight of the evidence.    But this rule, like that of *falsum in uno, falsum in omnibus*, and the presumption of fraud, as a *matter of law*, from certain fiduciary relations (see *Pearce* v. *Lea*, 68 N. C. Rep., 90,) has been reduced to very narrow proportions, and is never applicable when it is necessary to resort to other evidence to support the conclusion ; in other words the fact of guilt must be *self-evident* from the *bare fact* of being found in the possession of the stolen goods, in order to justify the Judge in laying it down, as a presumption made by the law, otherwise it is a case, depending on circumstantial evidence, to be passed on by the jury.

486 IN THE SUPREME COURT.

CHESTER & LENOIR NARROW GAUGE R. R. Co., *et al. v.* COM. CALDWELL Co.

In our case, so far from the fact of guilt, to-wit, that the prisoner broke and entered the house and stole the watch and chain, being self-evident, it is a matter which under the circumstances proved, admits of grave doubt, for it may well be that the prisoner merely received the watch and chain, after some one else had committed the burglary, which would change the grade of crime very materially. As the case goes back for another trial, it is a matter for the Solicitor of the State, to consider whether it will not be well to send a new bill containing other counts to meet the different aspects of the case, as it may be looked upon by the jury.

Error.

PER CURIAM.                                        *Venire de novo.*