STATE v. J. J. FORD, E. R. CARSON, AND WILLIAM DAVENPORT.

(Filed 13 March, 1918.)

**1. Larceny—Criminal Law—"Recent Possession"—Presumptions.**

   The doctrine of recent possession, as applied under indictment for larceny, should be kept within proper limits, and a presumption of guilt will only apply when the possession is of such character as to manifest that the stolen goods came to the possessor by his own act, or with his undoubted concurrence.

**2. Same—Facts.**

   The presumption of larceny from "recent possession" when it exists, is one of fact, and is stronger or weaker as the possession is more or less recent, and as the other evidence tends to show it to be exclusive or otherwise.

### 3. Same—Instructions—Trials.

When "recent possession" is relied upon to convict for larceny, on a Saturday night, and there is evidence that the goods were found on Sunday in a warehouse at the rear of a store of a partnership of which one defendant was a member, and that a certain third person committed the theft at night with an unidentified person, under this and the further evidence of this case, it is *Held* that there was sufficient evidence for conviction; but, as there was evidence that the warehouse was readily accessible by others, and the store had been left in charge of a clerk, etc., it was reversible error for the trial judge to instruct the jury that the "recent possession" of the goods in the warehouse raised the presumption of guilt of the defendant, a member of the firm. The guilt of the other partner was not involved in the case.

### 4. Larceny—Evidence—Trials—Questions for Jury.

Where the evidence, in a prosecution for larceny, tends to show that one of the defendants with an unidentified person, took the goods at night and carried them away with the cart and horse of his codefendant and put them in a warehouse, where they were found the next day; that the cart was driven to the house of the codefendant, where both of them were carousing or drinking that night, etc., it is sufficient to sustain a verdict of conviction for them both.

### 5. Courts—Trials—Prejudice—Instructions—Appeal and Error.

Upon this trial for larceny, the child of defendant went into the court room while the defendant was a witness, when the solicitor remarked that it was for the purpose of influencing the jury; *Held,* the instruction of the judge relieved the situation of prejudice to the defendant, if any existed, and his requiring the child to be carried into another room was a matter within his discretion.

### 6. Instructions—Criminal Law—Several Defendants.

Where the judge instructs the jury that they could find any one of several defendants on trial for larceny, or any two or all three guilty, or they may render a verdict of not guilty as to all of them, it is not objectionable as an instruction to find them all guilty, if they so found one of them.

APPEAL by defendants from *Calvert, J.,* at January Term, 1918, of PITT.

This is an indictment for larceny against three defendants, Davenport, Ford, and Carson. A verdict of guilty was returned against all of the defendants. The defendant Davenport does not appeal.

The evidence for the State tends to prove that the railroad warehouse at Whitehurst, N. C., was broken into on Saturday night, 31 March, 1917, and that goods were stolen therefrom; that the defendant Davenport and one other, who is not identified by the evidence, were present and participated in the larceny; that the goods were carried from Whitehurst and were placed in a warehouse at Bethel belonging to Ford & Shelton, a horse and cart being used for that purpose, belonging to the

defendant Carson; that the goods were placed in the warehouse within two or three hours after they were stolen; that the warehouse at Bethel is about 10 by 14 feet in size and was within a short distance of the store of Ford & Shelton; that Shelton, one of the partners, lived in the country and had very little to do with the management of the business of Ford & Shelton; that there was a front door to the warehouse which was fastened by a cheap lock with hasp and staple; that the staple had been broken and could be easily removed; that the key to this lock was kept on a nail near the office door inside the store and was found there on Sunday morning; that there was a back door to the warehouse which was fastened by a latch on the inside of the door and that there was a small window near the back door through which the latch could be reached; that Ford & Shelton had one clerk at the time of the larceny named Gregory; that he and Ford had the control and management of the business at that time; that on Saturday evening, the day of the larceny, Ford's wife was taken sick and he left the store about three o'clock and did not return until Sunday morning except for about a half-hour between seven and eight o'clock that night, and there is no evidence that he then went to the warehouse; that on Saturday night Gregory was in charge of the store; that on Sunday morning Gregory took the key to the warehouse from the nail where it was hanging in the store and opened the warehouse for parties who were in search of the stolen property.

The evidence also tends to prove that after the goods were placed in the warehouse of Ford & Shelton, the horse and cart were driven to the home of the defendant Carson; that the cart was left at the back door of the defendant and the horse placed in his stable near the dwelling house; that the defendant Davenport lived on the premises of the defendant Carson and was at his home on Saturday night as late as eleven o'clock; that he was also at the home of Carson early Sunday morning and that when parties approached the home some one was seen to jump and run and that when the parties went to the place they found the defendant Carson and asked him if he had seen any one run and he said that he had not seen anybody.

There are also declarations of the defendant Carson which will appear in the opinion.

His Honor charged the jury as to the defendant Ford, among other things, as follows: "The law says that when a person is found in possession of property which has been stolen and recently after the theft, the law presumes that the person found in possession of the property is the one who has stolen it, or that he is in some way criminally connected with the theft. . . . If you find from this testimony, and beyond a reasonable doubt, that Ford, the defendant, had the control and

management of that business and was in the control and dominion of the warehouse in which those goods were found, then he was in possession of the warehouse and consequently in possession of the goods, if you should find that they were found therein within the meaning of this rule with respect to the presumption from the possession." The defendant Ford excepted.

·There was a motion for nonsuit in behalf of both of the defendants Ford and Carson, which was overruled and both defendants excepted. Each of the defendants, Ford and Carson, were sentenced to a term of imprisonment on the county roads, and they appealed.

*Attorney-General Manning and Assistant Attorney-General Sykes for the State.*

*Albion Dunn and M. K. Blount for defendant Carson.*

*Julius Brown, Harding & Pierce and Evans & Evans for defendant Ford.*

ALLEN, J.   The doctrine of recent possession, as applied in the trial of indictments for larceny, frequently leads to the detection of a thief, when without it the guilty would go free; but the temptation to shift evidence of guilt from one to another, and the ease with which stolen property may be left on the premises of an innocent person, make it imperative that the doctrine be kept within proper limits, and as Lord Hale says 2 Pleas of the Crown, 289, "It must be very warily pressed."

*Gaston, J.,* says in *S. v. Smith,* 24 N. C., 406, while discussing a charge to the jury that recent possession of stolen property raised a presumption of guilt: "From necessity, the law must admit, in criminal as well as civil cases, presumptive evidence; but in criminal cases it never allows to such evidence any *technical* or *artificial* operation beyond its natural tendency to produce belief under the circumstances of the case. Presumptions of this kind are derived altogether by means of experience from the course of nature and the habits of society, and when they are termed legal presumptions it is because they have been so frequently drawn under the sanction of legal tribunals that they may be viewed as authorized presumptions.   Among these is that which was in the mind of his Honor, the recent possession of stolen goods, in the case of larceny, raising the presumption of an actual taking by the possessor. But when we examine the cases in which such a presumption has been sanctioned, or consider the grounds of reason and experience on which the presumption is clearly warranted, we shall find that it applies *only* when this possession is of a kind which manifests that the stolen goods have come to the possessor by *his own act* or, at all events, with his *undoubted concurrence.*"

In the *Smith case* tobacco was stolen Friday night, and was found Saturday morning in a barn on the land of Smith and within one or two hundred yards of his dwelling, and it was held error to charge that these facts raised a strong presumption of guilt, and the court lays no stress on the use of the word "strong" in the instruction and deals only with the question whether the facts raised a presumption against the defendant.

In *S. v. Graves,* 72 N. C., 485, *Pearson, C. J.,* says that the presumption does not arise except when "the fact of guilt must be *self-evident* from the *bare fact* of stolen goods," and *Hoke, J.,* in *S. v. Anderson,* 162 N. C., 571, that it is only when "he could not have reasonably gotten possession unless he had stolen them himself."

The principle is usually applied to possession which involves custody about the person, but it is not necessarily so limited. "It may be of things elsewhere deposited, but under the control of a party. It may be in a storeroom or barn when the party has the key. In short, it may be in any place where it is manifest it must have been put by the act of the party or his undoubted concurrence." *S. v. Johnson,* 60 N. C., 237.

The presumption, when it exists, is one of fact, not of law, and is stronger or weaker as the possession is more or less recent and as the other evidence tends to show it to be exclusive. *S. v. Rights,* 82 N. C., 675; *S. v. Record,* 151 N. C., 697.

Applying these principles, we are of opinion there is evidence to be submitted to the jury as against the defendant Ford, but that there is error in the charge.

His Honor charged the jury that the law presumed that the defendant had stolen the property or was criminally connected with the theft if he had control and management of the business and was in the control and dominion of the warehouse, making his guilt depend on two facts that were not in controversy, and he failed to instruct the jury that this presumption could not, however, arise unless this control, management, or dominion was exclusive, or unless the jury was satisfied beyond a reasonable doubt that the goods were placed in the warehouse "by the act of the party or his undoubted concurrence." *S. v. Johnson, supra.*

The distinction is important and material. There are thousands of barns, stables, outhouses, warehouses, chicken-houses in this State under the control, management, and dominion of the owner, many of them open and easy of access, in which stolen property may be secreted without the knowledge or concurrence of the owner, and it is going far enough to permit possession under these conditions to be considered as a circumstance without giving it the additional weight of a presumption raised by law which is equivalent to saying to the jury that the experi-

ence and observation of those who have been administering the law for hundreds of years is that the owner of the premises is the thief.

In this case the defendant Ford, who is shown to be a man of good character, testified without objection and without contradiction that Davenport, who with one other not identified stole the goods from the warehouse at Whitehurst, told him that they intended to carry the goods to Edgecombe County, but when they got to Bethel day was breaking and they had to put them somewhere or be caught with them, and as he knew about the warehouse he went around and drew the staple and put them in there.

This is not an unreasonable statement, because it must be remembered that the goods were stolen on Saturday night and placed in the warehouse early Sunday morning, and it might be reasonably expected by the thieves that the warehouse would not be used on Sunday, and that the goods would not be discovered before they could remove them on Sunday night.

The evidence is also practically uncontradicted that Ford's wife was very sick on Saturday evening and Saturday night; that Ford left the store about 3 o'clock Saturday evening and did not return until the next day, except for about a half hour between 7 and 8 o'clock, and there is no evidence that he then went to the warehouse; that the warehouse was a small building 10 by 14 feet, situated a short distance from the store; that there was a back door to the warehouse which was fastened by a bolt on the inside; that there was a small window near the door with panes of glass broken in it, and that the bolt could be reached through this window; that there was a front door to the warehouse which was fastened with a cheap padlock costing about 10 cents and a hasp and staple, and that the staple had been broken off before the time of the larceny and could be easily removed; that the key to the warehouse hung on a nail on the outside of the office in the store, and that it was there on Sunday morning; that the defendant Ford had in his employment a clerk named Gregory, who was in charge of the store on Saturday night and was left there by Ford when he returned to his home.

Under these circumstances it may be true that Davenport drew the staple and placed the goods in the warehouse without the knowledge or concurrence of Gregory or Ford, or that Gregory opened the warehouse for Davenport, or that Davenport opened the back door of the warehouse by lifting the bolt of the back door through the window, and at most the evidence of possession is only a circumstance which can be considered against the defendant.

The case of the defendant Carson stands upon a different footing, as his Honor told the jury that he could not be convicted unless he

either took the property from the warehouse at Whitehurst, or participated in taking it, and the principal question presented by his appeal is whether there is any evidence of this fact.

All of the evidence shows that the defendant Davenport was present and aided in taking the goods from the warehouse at Whitehurst, and that the goods were carried to Bethel on a cart pulled by a horse, both belonging to the defendant Carson, and that after the goods were placed in the warehouse of Ford the horse and cart were carried to the premises of Carson, reaching his premises very early Sunday morning. The evidence also tends to prove that Davenport was at the home of Carson as late as 11 o'clock on Saturday night, and that they were drinking together; that the stable in which the horse was kept was but a short distance from the house in which Carson and his wife lived; that when the horse and cart were returned on Sunday morning the cart was driven near to the back door of Carson and the horse carried to his stable; that on Sunday morning when parties went to the home of Carson searching for the thief, as they went up they saw a man jump and run a short distance from the home on the edge of the woods, and that they went to the place and found Carson and asked him if he had seen any one run and he said that he had not seen any one run, and that shortly thereafter Davenport was found in the woods near the place; that Carson said to one of the parties on Sunday morning, "I am not going to suffer for what other folks done. Somebody else is *connected* in this thing, and I am not going to suffer for what they did." And again he said, "They have got me right fair, but anyhow I can go on and serve my time out on the road like a man," and that he then laughed and said, "I am not going to suffer for what others have done. I have not done anything, and I do not expect to suffer for the doings of others."

These circumstances, while not necessarily conclusive, are sufficient to be submitted to the jury, and the motion for judgment of nonsuit was properly overruled.

The incident connected with the child of the defendant going into the courtroom while he was on the witness-stand is not reversible error. The remarks of the solicitor intimating that the child was brought in purposely to influence the jury does not appear to be warranted by anything appearing in the record, but his Honor immediately instructed the jury that they must not consider what had occurred, or the remarks of the counsel for the State, and that they should free their minds from any impression brought about by the scene which had transpired, and we must assume that the jurors obeyed the instruction as the incident was not of such character that the impressions associated with it could

not be easily removed. The order of the judge requiring the child to be carried to another room was a matter within his discretion.

We have examined the other exceptions of the defendant Carson and do not find any error.

The direction of his Honor that they could find any one or any two, or all three, of the defendants guilty, or that they might return a verdict of not guilty as to all of them, could not be understood by the jury to mean that if they found one guilty they must find all guilty, as he distinctly told them that they might find one guilty. or two guilty, which clearly implied a verdict of not guilty as to those not found guilty.

It is well to say, lest it might be misunderstood, that there is no claim or suggestion that the witness Gregory had any part or participation in the crime, and that his relation to the facts in evidence is referred to only for the purpose of showing the error in applying the presumption of guilt against the defendant Ford.

A new trial is ordered as to the defendant Ford and the judgment is affirmed as to the defendant Carson.

No error as to defendant Carson.

New trial as to defendant Ford.