STATE v. WALLACE ELEE FOSTER.

(Filed 23 November, 1966.)

**1. Burglary and Unlawful Breakings § 4;  Larceny § 5—**

The presumption from the possession of property which has been recently stolen does not obtain until the evidence establishes that the property had been stolen, that the property in possession of defendant was the identical property which had been stolen, and that the property was found in the possession of the defendant recently after the larceny.

**2. Burglary and Unlawful Breakings § 4—**

Evidence that six new tires of a particular make and tread had been stolen by breaking and entering the prosecuting witness' place of business, and that shortly after the breaking six tires of similar make and tread were found in defendant's constructive possession, without evidence identifying them as the identical tires taken from the prosecuting witness' place of business, is insufficient to raise a presumption of defendant's guilt of breaking and entering, since the doctrine of recent possession does not apply in the absence of evidence identifying the property found in defendant's possession as the identical property stolen.

**3. Same—**

Evidence of defendant's possession of property which had recently been taken from the prosecuting witness' place of business without any breaking or entering raises no presumption of defendant's guilt of breaking and entering even though other property had been stolen by breaking and entering from the prosecuting witness' place of business on same night. G.S. 14-54.

**4. Larceny § 7—  Evidence of defendant's recent possession of stolen property held sufficient to overrule nonsuit in larceny prosecution.**

Evidence that an electric battery charger was stolen from the prosecuting witness' place of business, that shortly thereafter an electric battery charger was found at the place of business owned and operated by defendant and his brother, that the battery charger had the appearance of having been freshly painted, that defendant's brother knew nothing about how the battery charger got into the building, together with evidence identifying by a cigarette burn the battery charger found in defendant's constructive possession as the identical battery charger which had been stolen, *held* sufficient to be submitted to the jury on the question of defendant's guilt of larceny of the battery charger.

**5. Larceny § 5—**

It is not required in order for the doctrine of recent possession of stolen property to apply that the property be found in the hands or on the person of defendant, it being sufficient if the property is under defendant's exclusive personal control.

**6. Criminal Law § 154—**

An assignment of error must show within itself specifically what questions are intended to be presented for consideration without the necessity of going beyond the assignment of error itself. Rule of Practice in the Supreme Court No. 19(3).

**7. Criminal Law § 118—**

Where an indictment contains several counts and the evidence applies to one or more but not to all, a general verdict will be presumed to have been returned on the count or counts to which the evidence relates.

**8. Larceny § 9—**

Where, in a prosecution for larceny of specified items of merchandise, the State's evidence is sufficient to be submitted to the jury on the question of defendant's guilt of the larceny of one of such items but not as to the others, a general verdict of guilty will be presumed to relate only to that item supported by the evidence, and the verdict will not be disturbed on appeal.

**9. Larceny § 3—**

Where the evidence is sufficient to support conviction of larceny of one item having a value less than $200 but insufficient to support a conviction of larceny of other items charged in the bill of indictment, the sentence cannot exceed that for a misdemeanor, G.S. 14-72, and the sentence for a felony must be vacated and the cause remanded for proper sentence.

APPEAL by defendant from *Gambill, J.,* 28 March 1966 Session of STANLY.

Criminal prosecution on an indictment containing three counts: The first count charges defendant on 1 January 1966 with feloniously breaking and entering a building occupied by one Floyd Hinson, wherein merchandise, chattels, and other valuable securities were being kept, with intent to commit a felony therein, a violation of G.S. 14-54; the second count charges defendant on the same day with the larceny of one electric battery charger, two 775x14 white wall tires, two 825x14 white wall tires, two 775x15 black wall tires, and six cartons of cigarettes, of the value of more than $200, of the goods and chattels of the said Floyd Hinson by feloniously breaking and entering a certain building occupied by Floyd Hinson wherein goods and valuables of Floyd Hinson were kept, a violation of G.S. 14-72; and the third count charges defendant on the same day with feloniously receiving stolen goods knowing them to have been previously stolen, taken, and carried away.

Plea: Not guilty. The court allowed a motion for judgment of nonsuit on the third count of receiving alleged in the indictment. Verdict: Guilty as charged in the indictment.

From a judgment of imprisonment on the first count in the indictment, and from a judgment of imprisonment on the second count in the indictment, the judgment on the second count to commence at the expiration of the sentence of imprisonment on the first count, defendant, by his court-appointed counsel, appeals.

*Attorney General T. W. Bruton and Assistant Attorney General James F. Bullock for the State.*
*Richard L. Brown, Jr., for defendant appellant.*

Parker, C.J. The State and defendant presented evidence. Defendant assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence.

The evidence of the State tends to show these facts: Floyd Hinson operated a Phillips "66" service station in the Frog Pond community, Stanly County, adjacent to Highway #27, about eight and one-half miles from the town of Albemarle. About 7:30 p.m. on 31 December 1965 he left his service station with all the windows down and fastened and all the doors closed and locked. Hinson returned to his service station a few minutes before 2 a.m. on 1 January 1966 and found that it had been broken into. He called the sheriff of the County. While waiting for the sheriff to arrive, he discovered that six Phillips "66" tires were missing that had been in his storeroom when he closed the night before and left. These six tires consisted of two 775x14 Deluxe action tread, white wall tires; two 775x15 safety action tread, black wall tires; and two 825x14 premium action tread, white wall tires. There were also missing six cartons of cigarettes. He went over to his grease pit and found that his used battery charger, which was in the grease pit the night before, was missing. This battery charger was white with a red trim. On 5 January 1966 he saw his used battery charger at the county jail. It had been freshly repainted. He identified the battery charger as his property by what looks like a cigarette burn that was on the charger when he got it. The charger originally had a three-prong plug, and one prong was broken off when he purchased it. It is now standard for a battery charger of this type to have three electrode plugs on it. He saw two automobile tires at the county jail and four automobile tires on a car in the police station. These six tires were of the same size and tread design that were stolen from his service station. The four tires on the automobile were all white walls, and the other two were black walls. The value of his used battery charger and of the six tires he saw at the county jail would be more than $200. Floyd Hinson testified on cross-examination: "I would not swear that those six tires are the same tires that I had at my service station, but I'll swear that they are the same size, tread design, and in the same order as those that got away from my service station."

On 31 December 1965 and during the early part of January 1966 Jackie Foster and his brother, the defendant, operated a garage and body shop business located at 910 East 18th Street in the city

of Charlotte. On 5 January 1966 Dwight Farmer, a deputy sheriff of Stanly County, went to the garage and body shop business located at 910 East 18th Street in the city of Charlotte, which was operated by Jackie Foster and his brother, the defendant. On entering this garage and body shop building he observed the battery charger, which Floyd Hinson identified as his, and two new Phillips "66" black wall tires in the back of the garage. The two tires were in the trunk of a 1955 or 1956 Ford automobile. The outside of the battery charger had the appearance of being freshly painted. He took these articles in custody and carried them to the town of Albemarle. Defendant was not in the building when he was there. He saw there Jackie Foster, a brother of the defendant.

Hoyle Lowder, a member of the Albemarle police department, saw defendant on West Main Street in the town of Albemarle on the night of 1 January 1966. He saw him again on 4 January 1966 on West Main Street in the town of Albemarle between 8:30 and 9:00 p.m. driving a white 1959 Oldsmobile. Nobody was in the car with him. The Oldsmobile defendant was driving on the night of 4 January 1966 had on it four new Phillips "66" white wall tires. Lowder took the automobile to the police department. The tires on this Oldsmobile were taken off and exhibited in court as State's Exhibit No. 2.

William D. Foster, a brother of defendant and a witness for the State, testified in substance: He is a mechanic employed by his brother, the defendant. He first saw this electric battery charger on Saturday morning in his brother's garage. There were paint cans on the floor when his brother and defendant moved into the building. The night before, he left the garage and closed it, and the next morning he saw this battery charger in the back of the garage. When he saw it in the back of the garage, defendant and several persons were there. He saw two tires in the back of the car that same morning. He last saw the battery charger when the officers picked it up and carried it away. He knows nothing about how the battery charger and the tires got into the building. He and his brother, the defendant, had keys to the garage.

Defendant did not testify in his own behalf, but offered the testimony of three witnesses.

Jackie Foster, brother of defendant and a witness for defendant, testified in substance: He first saw the battery charger introduced in evidence by the State on 2 January 1966 when a man by the name of John Langford came by the garage operated by defendant and himself selling secondhand merchandise. That day he bought from John Langford four 14-inch white wall tires, two 15-inch black wall tires, a battery charger, and a .22 rifle, and paid him $100 for

them. He kept the battery charger in the back part of the garage. He sold four white wall tires and the rifle to John Threat. John Threat put these four tires on his 1959 Oldsmobile. He kept the other two black wall tires in the garage in another car that they had got on a transaction for work being done on another car. On cross-examination Jackie Foster testified in substance: John Threat, his girl friend Yvonne Cahoon, and defendant were in the garage when he bought the battery charger and the tires from John Langford. The articles that he purchased from John Langford were worth about $300. He did not know the items were stolen. The battery charger looked like it had been freshly painted. He came to the town of Albemarle on the night of 4 or 5 January 1966 with Threat and defendant in Threat's 1959 Oldsmobile. That night he and Threat were arrested at the Pepper Pot Grill in Albemarle.

John Threat testified in substance for defendant: He worked part time with defendant and his brother. He went to their garage about 8:30 a.m. on 2 January 1966 and saw Jackie Foster purchase the battery charger, six automobile tires, and a rifle from a man he had never seen before. Later on that morning he bought the four white wall tires from Jackie Foster for $10 each and put them on his 1959 Oldsmobile, and he also bought from Jackie Foster for $20 the .22 rifle. On the night of 4 or 5 January 1966, he, Jackie Foster, and defendant came to the town of Albemarle in his 1959 Oldsmobile. At that time the .22 rifle was in his car. He had intended to take it out at his home but forgot it. He was arrested at the Pepper Pot Grill in Albemarle.

Yvonne Cahoon, a witness for defendant, testified in substance: On the morning of 2 January 1966 she went to the Foster garage with John Threat. She saw a man whom she did not know pushing a battery charger in the door. She saw a money transaction between Jackie Foster and this man. She also saw a man whom she did not know take some automobile tires into the garage.

After the defendant rested his case, the State offered as a witness H. A. Simmons, a deputy sheriff of Stanly County, who testified in substance: Somewhere around the premises of Hinson's service station that was broken into on the night of 31 December 1965 he made a plaster cast of a heel print. He sent this plaster cast of the heel print and the shoes of defendant to the F.B.I. laboratory in Washington, D. C. The F.B.I. laboratory sent back to him the plaster paris cast and defendant's shoes and a report of the result of its examination reading as follows: "Result of examination. Heelprints on the glass and cast were found to have been produced by heels of the same design as the heels on the submitted shoes. However, no specific wear characteristics or measurements in common

were found which would enable a determination whether the questioned prints were made by these particular shoes. The submitted evidence will be returned to you separately."

The State contends that its evidence considered in the light most favorable to it is sufficient to carry the case to the jury by virtue of the principle of law known as recent possession of stolen property by the accused. The rule itself indicates the conditions under which it operates, and to bring it into play there must be proof of three things: (1) That the property described in the indictment was stolen, the mere fact of finding one man's property in another man's possession raising no presumption that the latter stole it; (2) that the property shown to have been possessed by accused was the stolen property; and (3) that the possession was recently after the larceny, since mere possession of stolen property raises no presumption of guilt. *S. v. Parker*, 268 N.C. 258, 150 S.E. 2d 428; *S. v. Jones*, 227 N.C. 47, 40 S.E. 2d 458; *S. v. Norggins*, 215 N.C. 220, 1 S.E. 2d 533; 3 Strong's N. C. Index, Larceny, § 5; 52 C.J.S. Larceny, § 105; 32 Am. Jur., Larceny, §§ 122, 138.

"The identity of the fruits of the crime must be established before the presumption of recent possession can apply. The presumption is not in aid of identifying or locating the stolen property, but in tracking down the thief upon its discovery." *S. v. Jones, supra.*

The State has ample evidence that Floyd Hinson's service station was broken into and entered during the nighttime, and that there were stolen therefrom six automobile tires as specified in the indictment; that on the night of 4 January 1966, four days after the theft defendant was driving a 1959 white Oldsmobile on Main Street in the town of Albemarle which had on it four new Phillips "66" white wall tires; and that the next day a deputy sheriff of Stanly County went to the garage and body shop business located in the city of Charlotte, which was operated by defendant and his brother, Jackie Foster, and found there two new Phillips "66" black wall tires, which he carried to the town of Albemarle. Floyd Hinson looked at these six automobile tires and testified: "I would not swear that those six tires are the same tires that I had at my service station, but I'll swear that they are the same size, tread design, and in the same order as those that got away from my service station." It is a fact of common and general knowledge that Phillips Petroleum Company manufactures and sells thousands of Phillips "66" automobile tires throughout the United States similar to those that were stolen from Floyd Hinson's service station. Even if we concede that these six Phillips "66" automobile tires were stolen, there is no evidence that they were stolen from Floyd Hinson's service station and were Floyd Hinson's property. Consequently, the

rule of recent possession of stolen property cannot apply to these six automobile tires. The evidence is that the electric battery charger was taken from the grease pit of Floyd Hinson's service station, and that no breaking and entering was involved in taking this electric battery charger. The trial court erred in not allowing defendant's motion for judgment of compulsory nonsuit as to the first count in the indictment charging a breaking and entry, a violation of G.S. 14-54. The judgment of imprisonment on the first count in the indictment is vacated.

The State has ample evidence that on the night of Friday, 31 December 1965, or the early morning of Saturday, 1 January 1966, Floyd Hinson's electric battery charger was stolen from the grease pit of his service station. When this electric battery charger was stolen, it was painted white with a red trim. On Saturday morning, 1 January 1966, William D. Foster, a brother of defendant, saw an electric battery charger in the back of the garage and body shop owned and operated by defendant and his brother, Jackie Foster. At that time the defendant and several other persons were in the building. Paint cans were on the floor when defendant and his brother moved into the shop. He last saw the battery charger when the officers picked it up and carried it away. He knows nothing about how the battery charger got into the building. He and his brother, the defendant, have keys to this garage and body shop. On 5 January 1966 a deputy sheriff of Stanly County went to the body shop business located in the city of Charlotte which was operated by Jackie Foster and his brother, the defendant, and observed in the back of the garage an electric battery charger, the outside of which had the appearance of being freshly painted. When he was there, defendant was not in the building, but he saw there Jackie Foster. He took this electric battery charger and carried it to the town of Albemarle. Hinson identified this battery charger as his property by what looks like a cigarette burn that was on the battery charger when he got it, and by the fact that one of its three prongs was broken off when he purchased it. When he saw it on 5 January 1966 at the county jail in Albemarle, it had been freshly repainted.

In *S. v. Weinstein*, 224 N.C. 645, 31 S.E. 2d 920, 156 A.L.R. 625, the Court said:

> "The applicability of the doctrine of the inference of guilt derived from the recent possession of stolen goods depends upon the circumstance and character of the possession. 'It applies only when the possession is of a kind which manifests that the stolen goods came to the possessor by his own act or with his undoubted concurrence' *(S. v. Smith,* 24 N.C. 406), and so re-

cently and under such circumstances as to give reasonable assurance that such possession could not have been obtained unless the holder was himself the thief. *S. v. Baker,* 213 N.C. 524, 196 S.E. 829; *S. v. Ford,* 175 N.C. 797, 95 S.E. 154; *S. v. Graves,* 72 N.C. 482. If the circumstances are such as to exclude the intervening agency of others between the theft and the recent possession of stolen goods, then such recent possession may afford presumptive evidence that the person in possession is the thief. *S. v. Patterson,* 78 N.C. 470; *S. v. Lippard,* 183 N.C. 786, 111 S.E. 722; *S. v. McFalls,* 221 N.C. 22, 18 S.E. 2d 700. The presumption, however, is one of fact only and is to be considered by the jury merely as an evidential fact along with other evidence in determining the defendant's guilt, *S. v. Baker, supra.*"

It is not always necessary that the stolen property should have been actually in the hands or on the person of the accused, it being sufficient if the property was under his exclusive personal control. 52 C.J.S., Larceny, § 107; 32 Am. Jur., Larceny, § 140; 1 Wharton's Criminal Evidence, 12th Ed. by Anderson, Presumptions and Inferences, § 135. This Court said in *S. v. Harrington,* 176 N.C. 716, 96 S.E. 892: "The principle is usually applied to possession which involves custody about the person, but it is not necessarily so limited. 'It may be of things elsewhere deposited, but under the control of a party. It may be in a store-room or barn when the party has the key. In short, it may be in any place where it is manifest it must have been put by the act of the party or his undoubted concurrence.' *S. v. Johnson,* 60 N.C. 237."

The court correctly denied defendant's motion for judgment of compulsory nonsuit of the second count in the indictment, but the trial judge should have submitted the count of larceny to the jury only as to the electric battery charger, for the reason that there is no evidence in the record before us tending to show that the defendant stole the six automobile tires and six cartons of cigarettes, the property of Floyd Hinson, as specified in the second count in the indictment.

Defendant's assignments of error to the admission of evidence are overruled for two reasons: (1) These assignments of error do not show specifically what questions are intended to be presented for consideration without the necessity of going beyond the assignment of error itself. Rule 19(3), Rules of Practice in the Supreme Court, 254 N.C. 783, 797; *S. v. Spears,* 268 N.C. 303, 150 S.E. 2d 499; *In re Will of Adams,* 268 N.C. 565, 151 S.E. 2d 59; and (2)

they are without merit. Defendant has no exception to the court's charge.

There was a general verdict of guilty as charged in the indictment. The law is well settled in this jurisdiction that where an indictment contains several counts and the evidence applies to one or more, but not to all, a general verdict will be presumed to have been returned on the count or counts to which the evidence relates. *S. v. Hoover,* 252 N.C. 133, 113 S.E. 2d 281; *S. v. Smith,* 226 N.C. 738, 40 S.E. 2d 363; *S. v. Cody,* 224 N.C. 470, 31 S.E. 2d 445; *S. v. Snipes,* 185 N.C. 743, 117 S.E. 500. The first syllabus in our Reports in *S. v. Holder,* 133 N. C. 709, 45 S.E. 862, is: "Where there is more than one count in a bill of indictment, and there is a general verdict, the verdict is on each count; and if there is a defect in one or more of the counts, the verdict will be imputed to the sound count." The evidence of the State tends strongly to show that the defendant is guilty of the larceny of the electric battery charger stolen from the grease pit of Floyd Hinson, the property of Floyd Hinson, but there is no evidence that he was guilty of the larceny of the six automobile tires and the six cartons of cigarettes specified in the second count in the indictment, and there is no evidence that defendant is guilty of breaking and entry as charged in the first count in the indictment. It is manifest that the jury convicted the defendant of the larceny of the electric battery charger here. By analogy to the rules above stated in this paragraph, the verdict will be imputed to the second count in the indictment, and it will be presumed that the verdict of guilty on the second count relates only to the electric battery charger.

On the second count in the indictment charging larceny, the judge sentenced defendant to be imprisoned for not less than five nor more than ten years. It is perfectly plain from the evidence in the record that this electric battery charger was of less value than $200, and, consequently, the larceny of it from the grease pit was merely a misdemeanor. G.S. 14-72.

The judgment of imprisonment in the larceny case is ordered vacated, and this case is remanded to the Superior Court for a judgment on the verdict of guilty of the larceny of the electric battery charger, which is a misdemeanor.

The result is this: Reversed as to the first count in the indictment. No error in the trial of the second count in the indictment, except as to the judgment, and the judgment imposed upon the verdict of guilty upon that count is vacated, and the case is remanded for a proper judgment on that count in the indictment for the larceny of the electric battery charger, a misdemeanor.