STATE OF NORTH CAROLINA v. ROGER GREENE

No. 7523SC485

(Filed 17 December 1975)

1. Larceny § 7— disappearance of boggs from field — possession by defendant shortly thereafter — sufficiency of evidence

   Evidence was sufficient to be submitted to the jury in a larceny prosecution where it tended to show that boggs were last seen attached to a tractor in a field on 15 May 1974, defendant sold a set of boggs to one Pierce on 22 May 1974, and on 4 October 1974 the owner of the boggs saw them at Pierce's and identified them as his own.

2. Larceny § 7— disappearance of boggs and tractor — sufficiency of evidence of larceny of tractor

   Although the evidential fact or circumstance of defendant's unexplained possession of a set of boggs permits an inference that he stole the boggs, that circumstance, standing alone, does not permit the further inference that defendant took the tractor to which the boggs were attached and which disappeared at the same time as the boggs; however, additional evidential circumstances, including the fact that boggs are usually moved by a tractor, a tractor is ordinarily used to raise boggs if they are loaded onto another conveyance, the boggs were very heavy and difficult to load or move without a tractor, and the boggs had no utility without a tractor, were sufficient to allow the jury to consider whether defendant also took the tractor when he took the boggs.

   Judge MARTIN dissenting.

APPEAL by defendant from *Wood, Judge*. Judgment entered 18 February 1975 in Superior Court, WILKES County. Heard in the Court of Appeals 24 September 1975.

Defendant was indicted for larceny of a Ford Diesel tractor and a set of Long brand boggs. It was alleged that the property had a value of $3500.00 and was owned by Newland Welborn and Herschel Greene. The larceny is alleged to have occurred on or about 16 May 1974.

State v. Greene

In the light most favorable to the State the evidence tends to show the following facts.

Newland Welborn lives in Watauga County and owns a Ford tractor. Herschel Greene lives in Wilkes County and owns a set of disc boggs. The brand name of the boggs was Long, the manufacturer. Welborn rented some corn land in Wilkes County and borrowed the set of boggs from Herschel Greene.

On the night before they were "taken" or "got gone," 15 May 1974, the tractor and boggs were left on the farm of Harold Blackburn in Wilkes County. Herschel Greene saw the tractor and boggs there about 8:30 p.m. and at that time the boggs were attached to the tractor by pins to a three-point hitch. Welborn has not seen his tractor since that time.

On 22 May 1974, defendant sold a set of boggs to Larry Pierce for $125.00. On 4 October 1974, Herschel Greene saw those boggs at Pierce's and identified them as the ones he loaned to Welborn.

Herschel Greene valued his boggs at $400.00. Larry Pierce said they were worth between $125.00 and $175.00. Welborn valued his tractor at $4,000.00.

Defendant offered no evidence. The judge instructed the jury that it might return a verdict of either guilty of felonious larceny, nonfelonious larceny or not guilty. The verdict was guilty of felonious larceny and judgment imposing a prison sentence was entered.

*Attorney General Edmisten, by Assistant Attorney General James L. Blackburn, for the State.*

*McElwee, Hall & McElwee, by John E. Hall, for defendant appellant.*

VAUGHN, Judge.

[1] Upon the evidence presented the jury could have found that the boggs described in the indictment were stolen on or after the night of 15 May 1974 and that they were the same boggs in the unexplained possession of defendant and by him sold to Pierce on 22 May 1974. From the foregoing circumstances the jury could infer that defendant had stolen the boggs.

Some of the State's evidence was that the value of the boggs was sufficient to make the larceny thereof a felony. Other

State v. Greene

State's evidence tended to show that the boggs were worth less than $200.00. Under the charge of the court the jury was also permitted to find that defendant also stole the missing tractor. If the evidence was insufficient to go to the jury on the question of whether defendant stole the tractor, there must be a new trial, because it cannot be said that the jury did not consider the value of the tractor when it considered whether defendant was guilty of felonious larceny or misdemeanor larceny.

Does the inference that is permitted by reason of defendant's possession of the stolen boggs soon after their theft, permit the additional inference that defendant also took the tractor that was last seen at the same place from which the stolen boggs were taken?

This Court has said:

"Where it is shown that a number of articles of property have been stolen at the same time and as a result of the same breaking and entering of the same premises, evidence that a defendant charged with the crimes has possession of one of such articles tends to prove, not only that he stole that particular article, but also that he participated in the breaking and entering *and in the larceny of the remaining property. State v. Blackmon,* 6 N.C. App. 66, 75, 169 S.E. 2d 472, 478. (Emphasis added.)

The case now before us, however, does not involve a breaking or entering. The Supreme Court of this State appears to have made a distinction between when separate items are taken after a breaking or entering and when they are merely taken from the same premises at or near the same time.

In *State v. Foster,* 268 N.C. 480, 151 S.E. 2d 62, defendant was charged with and convicted of felonious breaking or entering and felonious larceny.

Evidence in the record on appeal filed in that Court discloses that the operator of a service station testified as follows:

"On January 1, 1966, I operated a Phillips 66 Service Station consisting of a one-story building with five rooms, including a grease bay, wash bay, and three rooms. On January 1, 1966, *I had in this building* tires, *battery charger,* tools, cigarettes, a few canned goods, polishes, and washes.

I left this building at 7:30 o'clock on the night of December 31st, completely locked. All the windows were down and fastened and all the doors were closed and fastened. I came back to the service station at 15 minutes of 2:00 o'clock on the morning of January 1st, 1966. The *grease bay door,* a big 10-foot wide door that enters the building, *was rolled up* about eighteen inches. *It was down* when I left there at 7:30 the night before. A glass about 16 x 19 in the big door was *broken* out and was scattered all over the floor inside the building. A small door that goes into my display room had a hole, about 8 x 10, broken in it and a small glass in the corner of the door was broken out. The door was not unlocked. The shattered glass from that was inside the building. That door had not been opened. It could not be unlocked by sticking a hand through that broken hold.

\*       \*       \*

I discovered six Phillips '66' tires were missing. Two were 775x14 Deluxe action tread, wrap around tread. Two were 825x14 premium action tread, white wall. Two were 775x15 safety action tread, black wall. Four were white wall and two were black wall. The Deluxe and premium were white walls. There was also missing approximately a half dozen cartons of cigarettes, mostly Winstons. When I left the night before, the tires were in the storeroom, right straight on through the display room. There is a wooden door to this room, but I don't think it was closed the night before when I left.

A small amount of change in a cigar box in the counter under the cash register, community flower money, at least a $1.00, maybe a little more, was missing.

I then went over in my *grease bay* and *found my battery charger* was missing. It was a used battery charger, I'm not sure about the name of it because it had been repainted. It was white with red trim. When I left the night before, it was *inside the lube bay door.* I do not believe there was anything else missing." (Emphasis added.)

The battery charger was worth $75.00 and the six tires were valued at more than $200.00.

There was other evidence tending to show that shortly thereafter defendant was in possession of the stolen battery

charger and tires which fit the general description of those taken from the service station. The Supreme Court concluded that the evidence was insufficient to identify the tires as being the ones taken from the station and that consequently, "the rule of recent possession of stolen property cannot apply to these six automobile tires." The Court held that there was ample evidence that the battery charger found in defendant's possession was the one taken from the station but was of the opinion that "no breaking and entering was involved in taking this electric battery charger."

The Court then held that a judgment of nonsuit should have been entered on the breaking or entering charge. Since the Court found there was no evidence defendant took the tires and other items taken at the same time and from the same premises as the battery charger, the judgment of guilty of felonious larceny was vacated and the case was remanded for proper judgment for larceny of the battery charger (valued at less than $200.00), a misdemeanor. The Court said

"The evidence of the State tends strongly to show that the defendant is guilty of the larceny of the electric battery charger stolen from the grease pit of Floyd Hinson, the property of Floyd Hinson, but there is no evidence that he was guilty of the larceny of the six automobile tires and the six cartons of cigarettes specified in the second count in the indictment, and there is no evidence that defendant is guilty of breaking and entry as charged in the first count in the indictment." *State v. Foster, supra.*

Our consideration of the facts in *Foster* leads us to conclude that there was, indeed, some evidence that a breaking and entering was involved in the taking of the battery charger. That the Supreme Court reached a contrary conclusion on the facts does not alter the control that the law of that case must have on the case before us.

In *Foster,* the State's evidence puts defendant in possession of tires which were "of the same size, tread design and in the same order" as those taken from the same premises and on the same night that the battery charger (also found in defendant's possession) was taken. In the case before us the State's evidence does not put a tractor of any description in defendant's possession. *Foster* held that defendant's possession of the battery charger was no evidence that he was guilty of larceny of the

State v. Greene

tires in his possession even though they fit the description of the State's items. In light of the foregoing, we feel compelled to hold that although the evidential fact or circumstance of defendant Greene's unexplained possession of the boggs permits the inference that he stole the boggs, that circumstance, standing alone, does not permit the further inference that he took the still missing tractor.

[2]   There are, however, additional evidential circumstances to be considered by the jury. The additional circumstances relate to the very nature of the stolen property. When last seen the tractor was attached to the boggs and disappeared at or about the same time. Ordinarily boggs are moved by a tractor. Ordinarily the lift of a tractor is used to raise boggs if they are loaded onto another conveyance. The disc boggs were very heavy (heavier than a disc harrow) and are difficult to load and move without a tractor. The boggs have no utility without a tractor. We think these additional evidential circumstances allow us to distinguish the present case from *Foster* and hold that the jury was properly allowed to consider whether defendant also took the tractor when he took the boggs.

We have reviewed defendant's other assignments of error and they are overruled.

We find no prejudicial error in defendant's trial.

No error.

Chief Judge BROCK concurs.

Judge MARTIN dissents.

Judge MARTIN dissenting.

Defendant's principal assignment of error challenges the sufficiency of the evidence to go to the jury and sustain the verdict.

Upon the evidence presented in the present case, the jury could have found that the boggs described in the indictment were stolen on or after the night of 15 May 1974 and that they were the same boggs in the unexplained possession of defendant and by him sold to Pierce on 22 May 1974. Basing its finding on the facts presented and on the "recent possession doctrine,"

the jury could infer that the defendant stole the boggs. However, the court instructed the jury that it could consider the "recent possession doctrine" and circumstantial evidence in arriving at its verdict with respect to both the boggs *and* the tractor.

In order for the "recent possession doctrine" to apply in a particular case, there must be proof of these things: " (1) That the property described in the indictment was stolen, the mere fact of finding one man's property in another man's possession raising no presumption that the latter stole it; (2) that the property shown to have been possessed by accused was the stolen property; and (3) that the possession was recently after the larceny, since mere possession of stolen property raises no presumption of guilt." *State v. Foster,* 268 N.C. 480, 151 S.E. 2d 62 (1966). "The applicability of the doctrine of the inference of guilt derived from the recent possession of stolen goods depends upon the circumstance and character of the possession. 'It applies only when the possession is of a kind which manifests that the stolen goods came to the possessor by his own act or with his undoubted concurrence' (Citation omitted), and so recently and under such circumstances as to give reasonable assurance that such possession could not have been obtained unless the holder was himself the thief." *State v. Weinstein,* 224 N.C. 645, 31 S.E. 2d 920 (1944).

The evidence in the present case does not fix the defendant with possession of the tractor as is required before the presumption can apply. "The identity of the fruits of the crime must be established before the presumption of recent possession can apply. The presumption is not an aid of identifying or locating the stolen property, but in tracking down the thief upon its discovery." *State v. Jones,* 227 N.C. 47, 40 S.E. 2d 458 (1946). The doctrine has no application in the present case in respect to the still missing tractor.

Further, there are no additional circumstances which significantly bolster the State's case. There was no evidence that the tractor was ever in the possession of defendant or under his control. There were no incriminating circumstances linking defendant with the still missing tractor except that at one time the boggs were hitched to the tractor.

Thus, although defendant Greene's unexplained possession of the boggs permits the inference that he stole the boggs, it does

not permit the further inference that he took the still missing tractor. " 'A basic requirement of circumstantial evidence is reasonable inference from established facts. Inference may not be based on inference. Every inference must stand upon some clear and direct evidence, and not upon some other inference or presumption. (Citations).' " *State v. Parker*, 268 N.C. 258, 150 S.E. 2d 428 (1966).

For the reasons stated, there should be a new trial at which time the jury may find defendant guilty of felonious larceny of the boggs, misdemeanor larceny of the boggs, or not guilty.