State v. McKay

―――――

STATE OF NORTH CAROLINA v. MALCOM REX McKAY

No. 7610SC610

(Filed 5 January 1977)

1. Searches and Seizures § 1— warrantless search of vehicle — probable cause to search

In a prosecution for breaking and entering motor vehicles with intent to commit larceny therein, the trial court did not err in denying defendant's motion to suppress C.B. radios and other evidence seized from defendant's vehicle without a warrant where the evidence tended to show that an officer observed defendant speeding 80 mph in a 55 mph zone; the officer stopped the car and directed defendant who was driving to exit the car and display his driver's license; defendant did not comply; the officer approached the car, opened the door, and again directed defendant to get out; the officer detected the odor of marijuana and saw marijuana seeds on the floor; as defendant got

out of the car, the officer saw several knives on his belt; the officer arrested defendant for speeding; and the officer then searched the car without defendant's consent.

**2. Burglary and Unlawful Breakings § 5— breaking into vehicles — possession of recently stolen property — sufficiency of evidence**

In a prosecution for breaking and entering motor vehicles with intent to commit larceny therein, evidence was sufficient to be submitted to the jury where it tended to show that C.B. radios had been stolen from various motor vehicles; defendant was in control of the automobile in which they were found two days after they were stolen; defendant admitted the vehicle belonged to him and he was driving it; and defendant admitted knowledge that two of the radios were there, but denied that they were stolen.

**3. Burglary and Unlawful Breakings § 6— breaking into vehicles — burden of proof — jury instructions proper**

In a prosecution for breaking and entering motor vehicles with intent to commit larceny therein, the trial court properly instructed the jury that defendant was presumed innocent and that the State had the burden of proving his guilt beyond a reasonable doubt.

**4. Criminal Law § 114— jury instructions — contentions of parties — no expression of opinion**

The trial court in a prosecution for breaking and entering motor vehicles with intent to commit larceny therein did not overemphasize and repeat the contentions of the State or fail to give equal stress to the contentions and evidence of defendant, thereby violating G.S. 1-180.

APPEAL by defendant from *McKinnon, Judge.* Judgment entered 26 February 1976, Superior Court, WAKE County. Heard in the Court of Appeals 9 December 1976.

Defendant was charged in bill of indictment No. 75CR71133 with eight separate counts of breaking and entering motor vehicles with intent to commit larceny therein and in indictment No. 75CR7286 with four counts of breaking and entering motor vehicles with intent to commit larceny therein. At the close of State's evidence, all counts having been consolidated for trial, five counts were dismissed for insufficient evidence. The jury returned a verdict of guilty as to each of the remaining seven counts, and defendant appeals from the judgment entered on the verdicts.

Other relevant facts are set out in the opinion below.

*Attorney General Edmisten, by Special Deputy Attorney General T. Buie Costen, for the State.*

*Garland B. Daniel for defendant appellant.*

MORRIS, Judge.

[1]   On 15 January 1976, defendant, through his court-appointed counsel, moved in writing to suppress certain specified evidence expected to be offered by the State upon trial of the charges. The motion was concerned primarily with listed C.B. radios but also included hunting equipment, a Remington shotgun, and a .22 calibre pistol. On the day of and prior to the beginning of the trial of the charges on 24 February 1976, the court heard the motion to suppress. The court found facts and ruled that the evidence was competent and admissible. The ruling of the court overruling defendant's motion constitutes defendant's first assignment of error.

State's evidence on the motion to suppress is summarized as follows: On 14 November 1975, Georgia State Highway Trooper Coward was assisting in running the radar on Interstate 95. A 1966 Plymouth came through the radar at a speed of 80 miles per hour, the speed limit being 55 miles per hour. Trooper Coward pursued the automobile, turned on his blue light, and the driver of the Plymouth pulled to the right side of the road. Trooper Coward got out of his car and asked the driver of the Plymouth to get out and come to the rear of his car, so that the trooper could inspect his driver's license. For some reason, the driver failed to do so, so Trooper Coward walked to the car, opened the door, and again asked that the driver step to the rear of the car. When he opened the door, he detected the odor of marijuana and saw marijuana seeds on the floor. As the driver got out of the car, Trooper Coward saw " . . . several knives on the belt on the small of his back." These were concealed when he stood up or was sitting down, but were seen by Trooper Coward when the man turned his body to get out of the car. He directed the driver to go to the rear of the car and there told him he was under arrest for speeding. He also advised him that he had seen marijuana seeds and smelled marijuana which was sufficient probable cause to search the car. He walked back to the car and directed the beam of his flashlight into the interior of the car. He saw a bag of marijuana halfway hidden, stuck down in the crack of the seat. He removed that and went back and advised the driver that he was under arrest for possession of marijuana. He read him his "Miranda rights," searched him, took the knives from his body, handcuffed him, and called for a back-up unit. He returned to the Plymouth and discovered another white male under a blanket

asleep in the back seat. He got him out and arrested him for possession of marijuana. This passenger also had some knives on his person. When Trooper Coward looked in the car as the result of smelling marijuana and seeing marijuana seeds, he also saw a brand new C.B. radio just wired under the dash and installed very shoddily. Also in the front on the floorboard and in the back seat were several C.B. radios. A registration check of serial numbers disclosed they had been stolen in Raleigh and Garner. A search of the trunk revealed a suitcase filled with C.B. radios and a tool box containing C.B. radios. Additional radios were under a blanket. Both men were read their rights. Neither wanted to talk without the privilege of the presence of an attorney. The car was impounded and searched again. A total of 21 C.B. radios was found. Trooper Coward identified the driver of the vehicle as McKay and the passenger as George Lewis Davis. McKay did not give Trooper Coward permission to search the vehicle, and he did not have a search warrant. The search revealed roach holders, alligator clips, slang roaches, and butts of marijuana cigarettes all in the floor of the car. The majority of the radios were inside the car. There were several lying in plain view on the floor and on the seat, and there were several boxes inside the car. McKay and Lewis were taken in separate cars to the jail by the trooper and a deputy sheriff, and a wrecker was called to pick up the Plymouth. The inventory of the radios did not show whether a specific radio was found in the inside of the car or in the trunk of the car.

Defendant testified that he was speeding, saw the trooper come out behind him, and when he saw the blue light, he immediately pulled over to the side of the road. McKay got out of his car and met the trooper. The trooper noticed that he had at least one knife on his belt and asked him to remove it. McKay complied. The trooper walked to McKay's car, opened the door, and started to search it. He knelt down and came up with a bag of marijuana, carried it back to where McKay was, and informed McKay that he was under arrest for "possession of susjected narcotics. The trooper handcuffed McKay and called for assistance. A county sheriff came and put McKay in his vehicle, got Davis out of the car and handcuffed him and arrested him for possession of marijuana and placed him in the back of the same vehicle. The officers then proceeded to search the car, taking two radios from the car—one that was hooked up and one that was under the seat. He also removed a .22 caliber pistol

from the glove compartment. He then took the key from the ignition and tried to open the trunk but could not. He did, however, get in the trunk and searched there, finding some more radios. The marijuana was not in plain view. McKay's permission to search the car was not obtained and no search warrant was shown him. McKay did not know the car contained stolen merchandise. Davis said he put the radios in there. The radio connected and the one under the seat were not stolen but purchased by McKay from a friend. McKay did not know there was marijuana in the car and does not use it himself. He had two radios because he normally had two cars.

Davis testified to substantially the same effect as McKay. He said the marijuana was his and he had stolen all the radios except the Cobra which was "hooked up," and that was McKay's. McKay didn't have anything to do with stealing them. He had asked McKay to take him to Florida. The trunk was not locked but was tied down.

The court found the facts to be as testified to by Trooper Coward and concluded that under these circumstances Trooper Coward had probable cause to conduct a search of the passenger compartment of the vehicle.

" . . . [I]n the carrying out of that search, he found at least five or six C.B. radios in the passenger compartment of the vehicle. Upon these findings and upon finding the passenger, Davis, in the back seat of the vehicle, the Court is of the opinion that Mr. Coward had the right and the responsibility to take the defendant and Davis into custody and thereafter to take the vehicle into custody pending the disposition of charges against them. At this point the officer caused the trunk of the vehicle, which was secured by being tied rather than locked, to be opened and searched, and found therein in boxes, in suitcase and in a tool box a number of other citizens band radios."

We are of the opinion that the court properly concluded that the officers were within their rights and not in violation of any constitutional rights of defendant in the search of the vehicle, in its impoundment, and in the seizure of the C.B. radios found.

Defendant argues that Trooper Coward's intitial intrusion into the vehicle by opening the door and directing defendant to

exit the vehicle was not justified and was, therefore, unreasonable and illegal. If the initial intrusion is justified, there is little difference between a search on the open highway and a later search at the station. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419, *reh. den.,* 400 U.S. 856, 27 L.Ed. 2d 94, 91 S.Ct. 23 (1970) ; *Coolidge v. New Hampshire,* 403 U.S. 443, n. 20, 91 S.Ct. 2022, 29 L.Ed. 2d 564, *reh. den.,* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed. 2d 120 (1971).

Clearly the initial intrusion here was justified. The officer had observed defendant speeding 80 miles per hour in an area where the speed limit was 55 miles per hour. He had stopped the car and directed the defendant to exit the car and display his driver's license. The defendant did not comply. The officer had every right to approach the car, open the door and again direct defendant to get out. This is the initial intrusion which defendant urges was unjustified and which disclosed marijuana in plain view. To hold that the officer was not justified in opening the door to the vehicle under the circumstances would simply defy reason and practicality. This we are not willing to do. This assignment of error is overruled.

[2]  Defendant by his next assignment of error contends that the court erred in overruling his motion to dismiss all counts in the bills of indictment and in overruling his "motion for a directed verdict of not guilty" at the close of all the evidence. He argues that the motions should have been allowed because the State failed to offer evidence of either element of the offenses; i.e., (1) breaking or entering a motor vehicle, (2) with intent to commit larceny therein.

At the trial, the State introduced the same evidence presented on the motion to suppress. In addition, Trooper Coward read into the record the serial numbers and brand names of the C.B. radios confiscated on 14 November 1975. Witnesses testified that on the 12th and 13th of November 1975, C.B. radios had been stolen from vehicles owned by them or under their control and they identified the stolen units by serial number or other identifying mark placed thereon by them.

Defendant correctly contends that the State must rely on the doctrine of possession of recently stolen goods. The doctrine of inference of guilt derived from the possession of recently stolen goods " ' . . . applies only when the possession is of a kind which manifests that the stolen goods came to the possessor

by his own act or with his undoubted concurrence' *(S. v. Smith,* 24 N.C. 406), and so recently and under such circumstances as to give reasonable assurance that such possession could not have been obtained unless the holder was himself the thief. (Citations omitted.)" *State v. Weinstein,* 224 N.C. 645, 650, 31 S.E. 2d 920, 924 (1944), *cert. den.,* 324 U.S. 849, 89 L.Ed. 1410, 65 S.Ct. 689 (1945). Nor does possession have to be such that the goods are actually in the hands or on the person of the accused. It is sufficient if the property was under his exclusive personal control. *State v. Foster,* 268 N.C. 480, 151 S.E. 2d 62 (1966). " 'It may be of things elsewhere deposited, but under the control of a party. It may be in a store-room or barn when the party has the key. In short, it may be in any place where it is manifest it must have been put by the act of the party or his undoubted concurrence.' *S. v. Johnson,* 60 N.C. 237." *Id.,* at 487, 151 S.E. 2d at 67.

Nor does it apply unless there is proof that the property had been stolen. Here, there is clear proof that the radios had been stolen. Defendant was in control of the automobile in which they were found, admitted the vehicle belonged to him, and was driving it at the time. He admitted knowledge that two of the radios were there, but denied they were stolen. There is sufficient evidence of possession and control to raise the presumption. The court properly submitted the case to the jury.

[3] With one exception, defendant's remaining assignments of error are to the court's instructions to the jury. He first contends that the court failed to remind the jury at proper points in the charge that the burden of proof remained with the State. The court clearly instructed the jury that the defendant was presumed innocent and that the State had the burden of proving his guilt beyond a reasonable doubt. Additionally, he clearly instructed them that in order for them to find defendant guilty the State had to prove all elements of the offense beyond a reasonable doubt, and throughout the charge referred to proof by the State beyond a reasonable doubt. The court is not required to do more—certainly, in the absence of any request for special instructions because of the circumstances of the case. Defendant asked for no special instructions nor were any necessary.

[4] Next defendant urges that the court violated G.S. 1-180 by overemphasizing and repeating the contentions of the State and

in failing to give equal stress to the contentions and evidence of the defendant and by tending to ridicule and discredit the defendant and his evidence. A careful reading of those portions of the charge to which defendant excepts reveals when the court gave the contentions of the State, he clearly so labelled them and gave them dispassionately and accurately. The same treatment was given defendant's contentions and evidence. We find no misstatement of evidence, no undue emphasis to State's contentions, nor any partisan conduct by the court. Defendant also contends that the court failed to instruct the jury properly on possession of or constructive possession of recently stolen property and what evidence, direct or circumstantial, is necessary to prove possession. On the contrary, we find the charge of the court to be a correct statement of the law in this respect.

The only remaining assignment of error is to the court's failure to allow defendant's motion to set aside the verdict and for a new trial. These are purely formal and we see no need to reiterate what has already been said. Suffice it to say, in our opinion defendant, represented by able counsel at trial and on appeal, received a fair trial free from prejudicial error.

No error.

Chief Judge BROCK and Judge BRITT concur.