STATE OF NORTH CAROLINA v. WILES BLACKMON AND HAROLD LEE BLACKMON

No. 6920SC81

(Filed 17 September 1969)

**1. Criminal Law § 104— motion for nonsuit — consideration of evidence**

Upon motion for judgment of nonsuit in a criminal action, the evidence must be interpreted in the light most favorable to the State and all reasonable inferences favorable to the State must be drawn from it.

**2. Criminal Law § 106— motion for nonsuit — sufficiency of evidence**

To withstand motion for judgment of nonsuit in a criminal action, there must be substantial evidence of all material elements of the offense, and it is immaterial whether the substantial evidence be circumstantial, direct or both.

**3. Criminal Law §§ 60, 106; Burglary and Unlawful Breakings § 5; Larceny § 7— nonsuit — sufficiency of fingerprint evidence**

In this prosecution for felonious breaking and entering and felonious larceny, evidence that the fingerprints of both defendants were found on broken window glass at the point of the illegal entry *is held* sufficient to take the case to the jury, where there was no evidence that either defendant had ever lawfully been in or around the place of business before, and the fingerprints were found at a location where lawful entry or exit would not normally be made and customers' or other members of the public would not have lawful occasion to be.

**4. Criminal Law § 113— instructions — misstatement of evidence — necessity for objection**

While a slight inaccuracy in stating the evidence will not be held reversible error when the matter is not called to the court's attention in apt time to afford an opportunity for correction, an instruction containing a statement of a material fact not shown in evidence must be held prejudicial, even though not called to the court's attention at the time.

**5. Criminal Law §§ 113, 163— misstatement of evidence — slight inaccuracy — necessity for objection**

In this prosecution for breaking and entering and larceny in which an SBI agent testified that the lower portion of a window glass had been removed and was thrown into a ditch near the window, statement by the court in the charge to the effect that the agent had testified that the piece of glass found in the ditch, on which defendants' fingerprints were found, "fit the place where the window was broken," *is held* merely a slight inaccuracy in stating the evidence which should have been called to the court's attention in time for correction.

**6. Criminal Law § 114— instructions — expert testimony — expression of opinion**

In this prosecution for breaking and entering and larceny in which the State relied upon expert fingerprint testimony, statement by the trial court in the charge that the opinions of expert witnesses were "not necessarily conclusive" *is held* not to constitute an expression of opinion on the evidence, the portion of the charge relating to the weight the jury was to give to the testimony of expert witnesses being correct when considered as a whole.

**7. Criminal Law § 114— recapitulation of evidence — expression of opinion**

In this prosecution for breaking and entering and larceny, trial court's statement of the evidence relating to the circumstances of the arrest of one defendant was a correct recapitulation of the evidence and did not constitute a powerful summing-up against defendants which amounted to an expression of opinion by the court.

**8. Burglary and Unlawful Breakings § 5; Larceny § 5— doctrine of possession of recently stolen property — presumptions**

Where there is sufficient evidence that a building has been broken into and entered and that property has been stolen therefrom by such breaking and entering, the possession of such stolen property recently after the larceny raises presumptions of fact that the possessor is guilty of the larceny and of the breaking and entering.

**9. Burglary and Unlawful Breakings § 5; Larceny § 5— recent possession doctrine — possession of one of several articles stolen — presumptions**

Where it is shown that a number of articles of property were stolen at the same time and as a result of the same breaking and entering of the same premises, evidence that a defendant charged with the crimes has possession of one of such articles tends to prove not only that he stole

that particular article, but also that he participated in the breaking and entering and in the larceny of the remaining property.

**10. Burglary and Unlawful Breakings § 5; Larceny § 5— recent possession doctrine — property not listed in indictment**

Even though property found in defendant's possession is not listed in the bill of indictment and is not owned by the same person whose property defendant is charged in the indictment with stealing, a presumption that defendant stole the property listed in the indictment arises if the property found in defendant's possession was recently stolen at the same time and place as the property listed in the indictment.

**11. Burglary and Unlawful Breakings § 5; Larceny § 5— doctrine of recent possession — elapse of time from theft**

Whether the time elapsed between the theft and the moment when defendant is found in the possession of stolen goods is too great for the doctrine of recently stolen property to apply depends upon the facts and circumstances of each case, and the question is ordinarily a question of fact for the jury.

**12. Burglary and Unlawful Breakings § 5; Larceny § 5— doctrine of recent possession — elapse of time from theft — nature of stolen article**

If the stolen article is of a type normally and frequently traded in lawful channels, only a relatively brief interval of time between the theft and finding a defendant in possession may be sufficient to cause the inference of guilt to fade away entirely; if the stolen article is of a type not normally or frequently traded, the inference of guilt would survive a longer time interval.

**13. Burglary and Unlawful Breakings § 6; Larceny § 8— instructions — doctrine of recent possession — elapse of 27 days**

In this prosecution for breaking and entering and larceny, the trial court did not err in instructing the jury on the doctrine of possession of recently stolen property where the evidence showed that, approximately 27 days after the crimes were committed, defendant was found in possession of a handmade special-purpose tool not normally available in the community which had been stolen on the occasion in question, and fingerprint evidence tended to establish that defendant had been present at the time and place this unusual and unique tool had been stolen.

APPEAL by defendants from *McConnell, J.,* 22 January 1968 Criminal Session of MOORE Superior Court.

Defendants were tried on their pleas of not guilty to a single bill of indictment charging them with felonious breaking and entering and of larceny of property valued in excess of $200.00. Ralph Leach, a partner of Moore Motor Company, a partnership engaged in the business of automobile sales and service, testified that on 11 December 1967 the building housing this business was broken into and entered sometime between "6:00 o'clock closing and 8:00 o'clock

the next morning." A window located in the rear of the building which leads to the basement was broken out and unlatched. An acetylene torch had been used to cut the hinges from the door leading from the basement to the upstairs. He described this window and the condition in which he found it as follows:

> "The window is located in the back of the building. It is six feet tall, hinged, and comes to within about two or three feet off the ground. There are small panes in the window, which are four by twelve or five by twelve inches. The window was open the next morning when I got there. Pieces of glass were lying on the ground outside with a few fragments inside."

He also testified that certain property, which was listed in the bill of indictment, had been taken and further testified that some hand tools belonging to a mechanic, Abraham Van Boskerck, had been taken, but these tools were not listed in the bill of indictment.

A State Bureau of Investigation agent testified that he went to the Moore Motor Company building on 12 December 1967. He described what he found as follows:

> "I looked at the window which had been broken during the night. The window at the rear of the building, where the point of entry was made, consisted of two sections of glass, where it had been broken before and pieced back together. The upper portion had been broken and splintered. The lower portion apparently was removed just by pulling it out and was thrown in the ditch beside the window. The piece of glass was eight to ten inches in height and six inches in width. I processed the piece of glass that was removed from the ditch for latent fingerprints and did obtain several and submitted to the laboratory in Raleigh. There were other pieces of glass lying on the ground outside and a majority of them lying on the inside of the building on the floor. Four latent prints were found on the piece of glass from the ditch."

He further testified that another latent fingerprint was found on ". . . the window itself where it was entered. From the glass at the window, the windows adjoining the broken one. It was not on the same piece of broken glass found in the ditch, but was still in a window in its proper place. Right near the broken piece."

An expert witness testified and identified two of the latent fingerprints on the piece of glass found lying in the ditch as having been made by the right and middle index fingers of the defendant Harold Blackmon and another as having been made by the left

index finger of the defendant Wiles Blackmon. He also identified the latent fingerprint found on the piece of glass remaining in the window as having been impressed by the left index finger of the defendant Wiles Blackmon.

A police officer testified that he arrested the defendant Wiles Blackmon at 1:30 a.m. on 7 January 1968, after he had observed Wiles driving alone in his car between two old warehouse buildings near the railroad, and that he found a toolbox with assorted tools in the trunk of the car, which Wiles Blackmon had voluntarily opened for his inspection.

Van Boskerck, who was employed as a mechanic at Moore Motor Company, testified and positively identified a wrench found in the toolbox in the defendant Wiles Blackmon's car as being an "Allen set screw wrench brazed into a socket"; that he had brazed it into the socket himself; that he had made this tool several years previously and had used it one time, and had never seen a tool exactly like this one before or since; and that this particular tool was in his tool cabinet at Moore Motor Company on the night of 11 December 1967 and was missing therefrom on the morning of 12 December 1967.

The defendant Wiles Blackmon testified that he had bought some of the tools found in the trunk of his car at a store in Winston-Salem and some from pawnshops in Winston-Salem and Greensboro. The defendant Harold Blackmon did not testify.

The jury found each of the defendants guilty as charged in the bill of indictment. Separate judgments were rendered against each defendant from which they appealed, assigning errors.

*Attorney General Robert Morgan and Assistant Attorney General Millard R. Rich, Jr., for the State.*

*P. H. Wilson for defendant appellant Wiles Blackmon.*

*E. O. Brogden, Jr., for defendant appellant Harold Blackmon.*

PARKER, J.

Defendants assign as error the failure of the court to grant their motions for judgment of nonsuit.

[1, 2]    It is well established that upon a motion for judgment of nonsuit in a criminal action, the evidence must be interpreted in the light most favorable to the State and all reasonable inference favorable to the State must be drawn from it. *State v. Miller,* 270

N.C. 726, 154 S.E. 2d 902, and cases cited therein. To withstand the motion there must be substantial evidence of all material elements of the offense, and it is immaterial whether the substantial evidence be circumstantial or direct, or both. *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431. In the present case there was ample direct evidence that the crimes with which defendants were charged had been committed by someone. The question presented is whether the fingerprint evidence was, under the circumstances of this case, sufficiently substantial evidence that defendants were the perpetrators to justify submitting the matter of their guilt to the jury.

The question as to the sufficiency of fingerprint evidence to overcome a defendant's motion for judgment of nonsuit has been discussed by our Supreme Court in several cases. In State v. Helms, 218 N.C. 592, 12 S.E. 2d 243, the defendant was charged with breaking and entering and larceny. Entry into a house had been gained through a porch window and a fingerprint identified as the defendant's was found on the window. The court held the evidence was sufficient to take the case to the jury, stating:

> "Evidence of fingerprint identification, that is, proof of fingerprints corresponding to those of the accused, found in a place where the crime was committed under such circumstances that they could only have been impressed at the time when the crime was committed, may be sufficient to support a conviction in a criminal prosecution. 20 Am. Jur., pp. 329 and 1076, Evidence, secs. 357 and 1223."

The court further stated that the question as to whether ". . . under the circumstances of the case, as the jury found them to be, the fingerprints so found could only have been impressed on the window at the time when the crime was committed, is a matter for the jury."

In *State v. Minton*, 228 N.C. 518, 46 S.E. 2d 296, the defendant was also charged with breaking and entering and larceny. His thumbprint was found on the outer side of a piece of broken glass which came from a door where entry was gained into the building and which was lying on the inside of the building. The court stated:

> "The fact that fingerprints corresponding to those of an accused are found in a place where a crime was committed is without probative force unless the circumstances are such that the fingerprints could have been impressed only at the time when the crime was perpetrated. 20 Am. Jur., Evidence, section 358; 16 A.L.R., Annotation, 370; 63 A.L.R., Annotation, 1324."

In *State v. Reid,* 230 N.C. 561, 53 S.E. 2d 849, cert. denied, 338 U.S. 876, 94 L. Ed. 537, 70 S. Ct. 138, where the defendant was charged with first-degree burglary, his fingerprint was found on the inside of a windowsill where entry had been gained into the building. The court distinguished *State v. Minton, supra,* factually on the ground that in *Minton* the defendant had been in the store lawfully in the afternoon of the day on which the crime was committed and could have impressed his fingerprint at that time. The court stated:

"We must keep in mind that a motion for judgment as of nonsuit in a criminal prosecution is properly denied if there is any competent evidence to support the allegations of a bill of indictment; and all the evidence tending to sustain the allegations in the bill of indictment upon which a defendant is being tried, will be considered in a light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. (Citing cases). Here the defendant was never lawfully in the apartment of the prosecutrix, and the presence of his fingerprint on the inside of the windowsill in the sleeping quarters of the prosecutrix, when considered with other evidence, was sufficient to carry the case to the jury."

In *State v. Tew,* 234 N.C. 612, 68 S.E. 2d 291, the defendant was charged with breaking and entering and larceny. His fingerprints were found on pieces of broken glass from the front door of a service station which was the point of entry. In addition the prosecutrix testified she had never seen the defendant in the service station before. Other fingerprints were found on the broken pieces of glass but it was not determined by whom they had been made. After noting with approval the principles stated in *State v. Huffman,* 209 N.C. 10, 182 S.E. 705, and in *State v. Helms, supra,* the court stated:

"In the light of these principles the testimony of the fingerprint expert tending to show that fingerprints found at the scene of the crime correspond with those of defendant, taken after his arrest in this action, coupled with the testimony of Mrs. George tending to show that, though she personally attended her service station, she did not know, and had not seen defendant before the date of the crime, is sufficient to take the case to the jury and to support a finding by the jury that defendant was present when the crime was committed and that he, at least, participated in its commission. *S. v. Huffman, supra.*"

[3]    In the case before us fingerprints of both defendants were

found on rear window glass at the point the illegal entry had been made into the building. This was not at a location where lawful entry or exit would normally be made or at a point where customers or other members of the public would normally have lawful occasion to be. There was no evidence that either defendant had ever lawfully been in or around the place of business before, as was the case in *Minton.* Under these circumstances we hold that the fingerprint evidence, when viewed in the light most favorable to the State and when every reasonable inference is drawn therefrom, was sufficiently substantial evidence to take the case to the jury and to support a finding by the jury that both defendants were present at the scene when the crimes were committed and participated therein. The motions for nonsuit were properly denied.

[5]    Defendants also assign as error certain portions of the court's charge to the jury. The first of these relates to a portion of the charge regarding the testimony of the SBI agent. After stating that the agent had testified that a piece of glass had been thrown or was found in the ditch near the window, the judge stated that the agent testified that he examined the window ". . . and the glass that was found in the ditch that fit the place where the window was broken . . ." The defendants contend the judge in this quoted portion of his charge was in effect saying that the glass found in the ditch, on which fingerprints were found, fitted the place where the window was broken, and that this was an expression of opinion in violation of G.S. 1-180 and a material misstatement of the evidence, citing *State v. Revis,* 253 N.C. 50, 116 S.E. 2d 171. The SBI agent had testified that upon arriving at the scene of the crime, ". . . I looked at the window which had been broken during the night. The window at the rear of the building, where the point of entry was made, consisted of two sections of glass, where it had been broken before and pieced back together. The upper portion had been broken and splintered. The lower portion apparently was removed just by pulling it out and was thrown in the ditch beside the window."

[4]    It is well settled that a slight inaccuracy in stating the evidence will not be held reversible error when the matter is not called to the court's attention in apt time to afford an opportunity for correction; on the other hand, an instruction containing a statement of a material fact not shown in evidence must be held prejudicial, even though not called to the court's attention at the time. 3 Strong, N.C. Index 2d, Criminal Law, § 113, p. 15, and cases cited. The question here presented is whether the judge's statement to the effect that the piece of glass found in the ditch "fit the place where

the window had been broken" was merely a slight inaccuracy in stating the evidence or was a statement of a material fact not shown in evidence.

[5] The material fact in relation to the piece of glass found in the ditch was whether it had come from the broken window at the point of entry into the building, and not whether it exactly fitted the jagged edges of the piece of glass left in the window. The SBI agent testified that the lower portion of the window was removed and was thrown in the ditch near the window. There was evidence, therefore, that the piece of glass found in the ditch came from the broken window. He further testified that the glass had been broken before and the two sections of glass had been pieced back together. Although he did not specifically testify that the piece of glass found in the ditch fit the place where the window was broken, the misstatement of his testimony by the judge in his charge was merely a slight inaccuracy. Since it was not called to the court's attention in apt time to afford him an opportunity for correction, there was no reversible error. *State v. Hoyle,* 3 N.C. App. 109, 164 S.E. 2d 83.

[6] Defendants' second assignment of error relating to the charge is to the statement of the trial judge that the opinions of expert witnesses were "not *necessarily* conclusive," but defendants cite no authority that such a statement is error, other than reference to G.S. 1-180. The portion of the charge relating to the weight the jury was to give to the testimony of expert witnesses, when considered as a whole, was correct. See 31 Am. Jur. 2d, Expert and Opinion Evidence, §§ 181 and 183, pp. 744 and 748.

[7] Defendants' third assignment of error with respect to the charge is to the manner in which the judge recapitulated the evidence relating to the circumstances of the arrest of Wiles Blackmon. They contend that in some way the State was made to have an advantage over this defendant within the principles set out in *State v. Benton,* 226 N.C. 745, 40 S.E. 2d 617, in that the judge in this portion of the charge appeared to be stating that Wiles was the sort of person who would break, enter and steal. Defendants contend that this constituted a powerful summing-up against them. This portion of the charge, however, was a correct recapitulation of the evidence and did not constitute prejudicial error as to the defendants under the principles of *State v. Benton, supra.*

The defendants assign as error the portion of the charge relating to the application of the doctrine of possession of recently stolen property. They contend this also constituted an expression of opinion in violation of G.S. 1-180 on the grounds that (1) the property

found in Wiles' possession upon his arrest was not identified as the property described in the indictment, (2) the property in Wiles' possession was not owned by the persons whose property he had been charged in the bill of indictment with having stolen, and (3) the time elapsed from the date of the alleged breaking and entering and larceny until the date of Wiles' arrest was too great for the doctrine to arise.

[8]  Chief Justice Parker in *State v. Foster*, 268 N.C. 480, 485, 151 S.E. 2d 62, 66, sets out the conditions for application of the doctrine of possession of recently stolen property as follows:

> "(1)  That the property described in the indictment was stolen, the mere fact of finding one man's property in another man's possession raising no presumption that the latter stole it; (2) that the property shown to have been possessed by accused was the stolen property; and (3) that the possession was recently after the larceny, since mere possession of stolen property raises no presumption of guilt. (Citing cases)."

If these conditions are met, and where, as in the present case, there is sufficient evidence that the building has been broken into and entered and that property has been stolen therefrom by such breaking and entering, then a presumption of fact arises that the possessor of the stolen property is guilty both of the larceny and of the breaking and entering. *State v. Jackson*, 274 N.C. 594, 164 S.E. 2d 369; *State v. Parker*, 268 N.C. 258, 150 S.E. 2d 428; *State v. Allison*, 265 N.C. 512, 144 S.E. 2d 578.

[9, 10]  The question which arises in the present case is as follows: Does the doctrine apply if the defendant is found in possession of goods he had not been charged in the bill of indictment with stealing, but which had been stolen from the same place and at the same time as the property listed in the bill of indictment? Where it is shown that a number of articles of property have been stolen at the same time and as a result of the same breaking and entering of the same premises, evidence that a defendant charged with the crimes has possession of one of such articles tends to prove, not only that he stole that particular article, but also that he participated in the breaking and entering and in the larceny of the remaining property. See *State v. Hullen*, 133 N.C. 656, 45 S.E. 513. Therefore, even though the property found in the defendant's possession was not listed in the bill of indictment, a presumption that the defendant stole the property listed in the bill of indictment arises if the property found in his possession had been stolen at the same time and place as the property listed in the bill of indictment and if the con-

ditions of *State v. Foster, supra,* are met, that is: (1) if the property found in his possession had been stolen, (2) if this property is the same property which was stolen at the time and place that the property listed in the bill of indictment was stolen, and (3) if this property was found in his possession sufficiently soon after the theft to give rise to the presumption. If the above conditions are met, it is immaterial that the property found in the defendant's possession was not owned by the same person whose property he was charged with having stolen in the bill of indictment.

The question remains in the present case, however, whether the time which elapsed from the date of the alleged theft until the date the property was found in the defendant Wiles Blackmon's possession was too great for the doctrine of possession of recently stolen property to apply.

Justice Higgins in *State v. Jackson, supra,* stated:

"Evidence or inference of guilt arising from the unexplained possession of recently stolen property is strong, or weak, or fades out entirely, on the basis of the time interval between the theft and the possession. The inference arising from the possession of recently stolen property is described as 'the recent possession doctrine'. Possession may be recent, but the theft may have occurred long before. In that event, no inference of guilt whatever arises. Actually, the possession of *recently stolen goods* gives rise to the inference. The possession, in point of time, should be so close to the theft as to render it unlikely that the possessor could have acquired the property honestly. (Citing cases)."

**[11, 12]**     Whether the time elapsed between the theft and the moment when the defendant is found in possession of the stolen goods is too great for the doctrine to apply depends upon the facts and circumstances of each case. Among the relevant circumstances to be considered is the nature of the particular property involved. Obviously if the stolen article is of a type normally and frequently traded in lawful channels, then only a relatively brief interval of time between the theft and finding a defendant in possession may be sufficient to cause the inference of guilt to fade away entirely. On the other hand, if the stolen article is of a type not normally or frequently traded, then the inference of guilt would survive a longer time interval. In either case the circumstances must be such as to manifest a substantial probability that the stolen goods could only have come into the defendant's possession by his own act, to exclude the intervening agency of others between the theft and the defend-

ant's possession, and to give reasonable assurance that possession could not have been obtained unless the defendant was the thief. *State v. Weinstein,* 224 N.C. 645, 31 S.E. 2d 920; *State v. Holbrook,* 223 N.C. 622, 27 S.E. 2d 725. The question is ordinarily a question of fact for the jury. *State v. White,* 196 N.C. 1, 144 S.E. 299.

**[13]**    In *State v. Holbrook, supra,* an elapsed time of eleven days was held to have been too great for the doctrine to apply. In *State v. Jones,* 227 N.C. 47, 40 S.E. 2d 458, an elapsed time of from sixteen to twenty days was held too long. In the present case, approximately twenty-seven days had elapsed from the date of the theft to the date the stolen wrench was found in the possession of the defendant, Wiles Blackmon. There was, however, in the present case the additional factor that the stolen article found in his possession was of a most unusual nature. It was a handmade tool, the like of which the mechanic who made it had never seen before or since and which over a period of years he had used only once. It was not the type of tool in common use nor one which a person would normally have occasion to acquire. The presumption that the possessor of recently stolen property is the thief "is a factual presumption and is strong or weak depending on circumstances — the time between the theft and the possession, *the type of property involved, and its legitimate availability in the community.*" *State v. Raynes,* 272 N.C. 488, 491, 158 S.E. 2d 351, 354. (Emphasis added.) In the present case defendant Wiles Blackmon was found in possession of a handmade special-purpose tool not normally available in the community. There was also in the present case the fingerprint evidence, which tended to establish that Wiles Blackmon had been present at the very time and place this unusual and unique tool had been stolen. Under the circumstances of this case, therefore, we do not believe it was prejudicial error for the court to have instructed the jury on the doctrine of possession of recently stolen property.

We have examined the remaining assignments of error and find them without merit. In the trial of both defendants we find no prejudicial error.

No error.

MALLARD, C.J., and BRITT, J., concur.