STATE OF NORTH CAROLINA v. JAMES ROSS CURTIS

No. 7315SC188

(Filed 9 May 1973)

**1. Robbery § 4— armed robbery — sufficiency of evidence**

There was sufficient evidence that defendant aided and abetted in the armed robbery of one Bailey to take the case to the jury where the evidence tended to show that though the actual shooting and robbery were committed by another, defendant was present at the scene of the crime and participated in a beating given the victim.

**2. Criminal Law § 102— introduction of evidence by defendant — right to close jury argument lost**

The trial court in an armed robbery prosecution properly ruled that defendant lost his right to conclude the arguments to the jury where defendant called a witness and examined him, but did not glean any helpful information from him. Rule 10, General Rules of Practice for the Superior and District Courts Supplemental to the Rules of Civil Procedure.

**3. Criminal Law § 102— jury argument — incompetent matters — exclusion proper**

Comments of defendant's counsel with respect to the disposition of the cases of other alleged participants in the crime were incompetent matters in the nature of speculation or conjecture, and no prejudicial error was shown by the trial court's refusal to allow defense counsel to argue the matters before the jury.

**4. Criminal Law § 168; Robbery § 5— recapitulation of evidence — slight misstatement — no reversible error**

In recapitulating the evidence a misstatement by the trial judge of the testimony of two witnesses was merely a slight inaccuracy and, since it was not called to the court's attention in apt time for correction, there was no reversible error.

**5. Robbery § 5— armed robbery — failure to submit lesser offense of common law robbery — no error**

The trial court in an armed robbery case did not err in failing to submit to the jury the lesser included offense of common law robbery where all the evidence in the case tended to show that the armed robbery charged was committed by defendant and others acting in concert and that defendant aided and abetted in the use and threatened use of the firearm, and where there was no evidence tending to show the commission of common law robbery.

APPEAL by defendant from *Cooper, Judge,* 14 August 1972 Session of Superior Court held in ALAMANCE County.

Defendant was charged in a bill of indictment, proper in form, with the felony of armed robbery, a violation of G.S. 14-87. Defendant pleaded not guilty.

State v. Curtis

Pertinent evidence for the State tended to show that at about 12:30 a.m. on 16 June 1972, David Bailey left the Desert Inn and went to the Farmer's Drive-In in Alamance County. There, Bailey met the defendant Curtis and asked Curtis to take him home. Curtis was with three other men, Russell Lee Clay, Jr., Jerry White and Robert Torrain. All four men got into Clay's car with Bailey and drove on Highway 87 toward Cole's Drive-In where Bailey hoped to find someone else to drive him to his home. Cole's Drive-In was closed, so the defendant reversed his direction, going back toward Bailey's home. During this part of the ride, Bailey fell asleep in the front seat. When Bailey awoke, the hood of the car was raised, and three of the men were outside of the car. One of the men told Bailey the car wouldn't start, but when Bailey turned the ignition switch the engine started immediately. The three men opened the car door and pulled Bailey out of the car. Bailey told the men that he would give them his money if they wanted it, but the men began beating Bailey with their fists. At about the same time, one of the men began shooting a pistol at Bailey, and Bailey's billfold, containing about $19.00, was ripped from his rear pants pocket. After the wallet was taken from his person, Bailey was wounded twice by the bullets fired at him. Another car appeared in the distance, coming down the road toward the robbery scene, and the three men got in their car and drove away.

Russell Lee Clay, Jr., testified for the State. His testimony tended to show that he, Jerry White, Robert Torrain, and the defendant left the Farmers Drive-In in Clay's mother's car in order to drive David Bailey home. The defendant was driving the car. Clay went to sleep. When he awoke the car was stopped, and when he alighted from the car, he saw Robert Torrain and the defendant beating Bailey. Torrain told Clay that "he was going to rob the M.F." After the defendant stopped beating Bailey, Bailey started to get up off the ground, whereupon Torrain shot at Bailey, knocking him back onto the ground. Clay grabbed Torrain's arm to keep him from shooting Bailey and the gun fired into the air. During this time, the defendant was standing close to Clay and Torrain. On the night after the robbery, Clay and the defendant were taken to the police station, and Clay observed that defendant had blood on his T-shirt.

Deputy Sheriff David Wilson of the Alamance County Sheriff's Department offered testimony which tended to corroborate the testimony of Bailey and Clay. Over objection, after a voir dire examination and findings of fact and conclusions of law based thereon, that the defendant had been advised of his constitutional rights and that a statement given by him was freely, voluntarily and understandingly made, Deputy Sheriff Wilson related to the jury a statement made by the defendant to Wilson on 17 June 1972. The statement tended to show that at the Farmer's Drive-In, Jerry White was drunk and that he never left the car that night. Robert Torrain came out of the Farmer's Drive-In with Bailey, and told Curtis "to come on." Curtis, Torrain, Clay, White and Bailey drove to a house to play poker at Bailey's suggestion, and Bailey left the car at the house and went to the door, but Bailey did not go in the house, and walked back to the car. While Bailey was at the door of the house, Torrain said, "He has some money, let's take it away from him." After Bailey got back in the car, Curtis drove back towards the Farmer's Drive-In, but when he stopped the car in order to urinate, the engine cut off and wouldn't restart. While Curtis was working on the engine, the car started, and, "I heard someone get hit. Robert and the white man got out, then Russell Clay, Jr., all three of us started beating the white man. Russell Clay, Jr. asked him for his money, he said he didn't have any. Robert said he should kill him. Robert shot one time at him, or in the air, I don't know which. * * * Robert shot the pistol twice. I saw blood in the stomach area, that is all. * * * "

After the State rested its case, the defendant moved for judgment as of nonsuit: Motion denied. Thereafter, the defense attorney requested that Robert Torrain be brought before the court as a witness. Torrain then took the witness stand as a defense witness. On the advice of his attorney, who was present in the courtroom, Torrain exercised his right to refuse to answer any question which would tend to incriminate him. The defendant then rested his case, and the trial judge ruled: " . . . that the defendant through his examination of Robert Torrain has introduced evidence in the case, and therefore, the State is entitled to the last speech to the jury."

The jury returned a verdict of guilty as charged, and defendant was sentenced to 20 years imprisonment. Defendant appealed to the Court of Appeals, assigning error.

*Attorney General Morgan and Assistant Attorney General Kane for the State.*

*Dalton & Long, by W. R. Dalton, Jr., for defendant appellant.*

MORRIS, Judge.

Defendant's assignments of error numbered 1 and 2 are directed to the action of the trial court in sustaining the solicitor's objections to certain questions asked of the State's witness Russell Lee Clay, Jr. on cross-examination. Defendant has cited no authority on the questions presented. We have carefully reviewed the excluded testimony and are of the opinion that no harmful error was committed therein.

[1] By assignments of error numbered 3 and 5 defendant presents the question whether there was sufficient evidence of armed robbery to take the case to the jury. Defendant argues that in his confessory statement read to the jury by Deputy Wilson, the defendant said, "I was trying to keep Robert from shooting him," and that this evidence logically shows that the defendant was not aiding and abetting Torrain in his use of the pistol. However, we are of the opinion that viewed in the light most favorable to the State, there was ample evidence that Robert Torrain, having in his possession and with the use and threatened use of a firearm whereby the life of David Bailey was endangered and threatened, took and carried away the billfold of David Bailey, containing $19.00, from his presence and person, and that the defendant aided and abetted Torrain in the commission of the crime. G.S. 14-87.

[2] Defendant's assignment of error numbered 4 presents the question whether the trial court properly denied the defendant the final argument to the jury.

Rule 10, "General Rules of Practice For the Superior and District Courts Supplemental to the Rules of Civil Procedure Adopted Pursuant to G.S. 7A-34," reads as follows:

"In all cases, civil or criminal, if no evidence is introduced by the defendant, the right to open and close the argument to the jury shall belong to him. If a question arises as to whether the plaintiff or the defendant has the final argument to the jury, the court shall decide who is so entitled, and its decision shall be final."

Formerly, the provisions of Rule 10 were included in Rules 3 and 6, "Rules of Practice in the North Carolina Superior Courts," 213 N.C. 836. Those rules were interpreted in McIntosh, N. C. Practice 2d, § 1492, where it was said that it is " . . . now fixed by the rules of court that where any question arises as to the opening and conclusion of the argument, it is within the discretion of the court to determine it, and his decision is conclusive, except where the defendant introduces no evidence, he shall have 'the right of reply and conclusion.' " By virtue of former Rule 6, cases which came within the purview of former Rule 3 ("when no evidence is introduced by the defendant, the right of reply and conclusion shall belong to his counsel") were reviewable on appeal because "[t]his is a substantial legal right, of which the defendants could not be deprived by an exercise of judicial discretion." *State v. Raper*, 203 N.C. 489, 166 S.E. 314 (1932).

Although new Rule 10 substantially tracks the wording of former Rules 3 and 6, the exception provided in former Rule 6, that cases under former Rule 3 were not to be finally decided by the trial court and were reviewable, has been deleted.

We do not decide whether the language of Rule 10 precludes the right of appeal from the decision of the trial judge with respect to the party having the right to close the argument to the jury, because it is clear that in this case the court properly allowed the State to close the argument. Defendant called a witness, examined him, and elicited from him information that the witness knew some of the alleged participants and had seen the other. Since defendant put on evidence, he lost his right to conclude the arguments to the jury. The fact that he was not able to glean helpful information from the witness does not restore to him the right to close the arguments.

[3] Defendant's assignment of error numbered 6 presents the question whether the trial judge committed error by not permitting defendant's counsel to argue to the jury that Russell Lee Clay, Jr., had already been "acquitted" by the solicitor and that Robert Torrain would be tried for the crime with which defendant was charged only if the defendant should be acquitted by the jury. The control of the argument of the solicitor and counsel is largely in the discretion of the presiding judge, and counsel may not, by insinuating questions or other means, place before the jury incompetent matters, not legally admissible in evidence or travel outside the record, injecting facts not included in the

evidence. *State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971) *vacated for resentencing,* 408 U.S. 939; *State v. Seipel,* 252 N.C. 335, 113 S.E. 2d 432 (1960). We hold that the excluded comments of defendant's counsel were incompetent matters in the nature of speculation or conjecture, that no prejudicial effect has been shown by not permitting defense counsel to argue those matters, and that the presiding judge properly ruled in that regard.

[4]   Assignments of error numbered 7, 8 and 10 are to portions of the judge's charge to the jury. After recapitulating the evidence given by Russell Lee Clay, Jr. and stating that Clay awoke in the car when he heard gunfire and got out of the car, the judge then said: "That Mr. Torrain said, 'We are going to rob him.' " Similarly, in recapitulating Deputy Wilson's testimony as to the contents of Clay's statement to Wilson, the judge stated: "That Mr. Torrain said they were going to rob the man." Defendant contends these were material misstatements of the evidence, constituting prejudicial error.

The evidence adduced at the trial tended to show that Russell Lee Clay, Jr. had in fact said, " . . . he was going to rob the M.F.," and that Deputy Wilson had corroborated that testimony, saying, "[t]hat Robert said he was going to rob" the prosecuting witness. The rule in regard to misstatements of fact in charging the jury is set forth in *State v. Frizzelle,* 254 N.C. 457, 119 S.E. 2d 176 (1961):

> " 'Ordinarily an inadvertence in stating the facts in evidence (in charging the jury) should . . . be brought to the attention of the trial court in apt time. But where the misstatement is of a material fact not shown in evidence, it is not required that the matter should have been brought to the trial court's attention.' (Parentheses added.) Strong, N. C. Index, Vol. 1, Appeal and Error, § 24, p. 102; *Baxley v. Cavenaugh,* 243 N.C. 677, 92 S.E. 2d 68."

See also, *State v. Blackshear,* 10 N.C. App. 237, 178 S.E. 2d 105 (1970); *State v. Blackmon,* 6 N.C. App. 66, 169 S.E. 2d 472 (1969). We are of the opinion that the misstatements in this case were "mere inaccuracies." There was other evidence at the trial given by Deputy Wilson that the defendant said in his statement to Wilson, " . . . Robert said to us, 'He has some money, let's take it away from him.' " Thus, the misstatement by the judge of Clay's and Wilson's testimony was merely a

[5]   In his assignment of error numbered 10 defendant asserts that the trial judge erred in failing to submit to the jury the possible verdict of guilty of common law robbery. Common law robbery is a lesser included offense of armed robbery. *State v. Bailey,* 278 N.C. 80, 178 S.E. 2d 809 (1971) ; *State v. Barksdale,* 16 N.C. App. 559, 192 S.E. 2d 659 (1972), *cert. denied,* 282 N.C. 673.

> " 'The necessity for instructing the jury as to an included crime of lesser degree than that charged arises when and only when there is evidence from which the jury could find that such included crime of lesser degree was committed. The *presence of such evidence* is the determinative factor.' " *State v. Griffin,* 280 N.C. 142, 185 S.E. 2d 149 (1971) ; *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545 (1954).

We hold that all the evidence in this case tends to show that the armed robbery charged was committed by the defendant, and others, acting in concert, and that the defendant aided and abetted in the use and threatened use of the firearm wielded by Robert Torrain, and that there is no evidence tending to show the commission of common law robbery. For that reason, it would have been error for the trial court to charge on the unsupported lesser degree of the crime. This assignment of error is overruled.

Defendant has had a fair trial, free from prejudicial error.

No error.

Judges BROCK and PARKER concur.