STATE OF NORTH CAROLINA v. WALTER LEE FINK, JAMES L. FINK

No. 7519SC324

(Filed 2 July 1975)

1. **Larceny § 7— identification of stolen wire**
    Wire found in defendants' possession was sufficiently identified to support an inference that it was wire stolen from a mobile home supply warehouse where the State's evidence tended to show that the warehouse was broken into and eighteen 1500-foot reels of "12-2" copper wire and twenty-one 2000-foot reels of "14-2" copper wire were stolen therefrom, one of the reels of "12-2" wire had the word "scrap" penciled on it, eighteen days later defendants were found in possession of eighteen 1500-foot reels of "12-2" copper wire and eighteen 2000-foot reels of "14-2" copper wire, one of the reels of "12-2" wire had the word "scrap" written on it in pencil, and the wire found in defendants' possession had the same stock numbers and was manufactured by the same company as the wire stolen from the warehouse.

State v. Fink

2. Larceny § 5— possession of recently stolen wire — 18 days between theft and possession

    Interval of 18 days between the theft of copper wire and defendants' unexplained possession of the wire did not render the doctrine of possession of recently stolen goods inapplicable.

APPEAL by defendants from *Long, Judge.* Judgment entered 6 December 1974 in Superior Court, ROWAN County. Heard in the Court of Appeals 17 June 1975.

This is a criminal prosecution wherein the defendants, Walter Lee Fink and James L. Fink, were charged in separate bills of indictment, proper in form, with the felonies of breaking or entering with the intent to commit larceny and larceny.

The State offered evidence tending to show the following: The Southeastern Mobile Home Supply Corporation, located on Palmer Road in Rockwell, N. C., is a distributor of electrical supplies for the mobile home industry. At approximately 3:15 a.m. on 11 September 1974, Officer J. A. Hopkins of the Rowan County Sheriff's Department discovered that the large "garage type door" of Southeastern's warehouse was open and that the alarm system had been activated. Robert McGee, general manager of the corporation, was called to the warehouse; and he observed that a "1971 one ton flatbed Dodge truck" and several reels of copper wire were missing. The truck was found about three hours later in a nearby river. No wire, however, was found on the truck.

An inventory of the warehouse was taken on the morning of the break-in, and it was learned that eighteen 1500-foot reels of "12-2" copper wire and twenty-one 2000-foot reels of "14-2" copper wire had been taken. Each reel weighed approximately 100 pounds, and the total value of the missing wire was $10,600. One of the reels of "12-2" wire had the word "scrap" written on the label in lead pencil. While the inventory was being taken, McGee discovered a hole approximately four feet high which had been cut in one of the exterior walls of the warehouse and which had been covered over on the outside of the building by clumps of grass. A fork-lift in the warehouse had apparently been used to load the wire onto Southeastern's truck. McGee testified that until about May 1974 James Fink had been employed by Southeastern as manager of the warehouse and that until about 16 April 1974 Walter Fink had worked part-time for Southeastern as a truck driver. The alarm system

was installed in the warehouse sometime during May 1974 and was designed to activate when any of the warehouse doors were opened after being locked for the night.

At 4:00 p.m. on 29 September 1974 the defendants rented a sixteen foot U-Haul truck from the Mason Exxon Service Station in Kannapolis. At about 9:00 p.m. on the same day, several officers of the Rowan County Sheriff's Department stopped the truck on Highway 29A near the North Kananpolis Police Department. The defendants were the sole occupants of the vehicle. A search of the truck revealed eighteen 1500-foot reels of "12-2" copper wire and eighteen 2000-foot reels of "14-2" copper wire. The reels found in the defendants' possession had the same stock numbers and manufacturer as the reels taken from Southeastern's warehouse. One of the reels of "12-2" wire found in the truck had the word "scrap" penciled on it. In identifying the reels of wire found in the defendants' possession, McGee specifically identified the reel with the word "scrap" written on it as the same reel which had been in the warehouse prior to the break-in. In fact, he had never seen any other reel of wire come from the manufacturer with the word "scrap" written on it.

Defendants offered no evidence.

The jury found both defendants guilty of breaking or entering and larceny. From judgments imposing a prison sentence of ten (10) years as to each defendant on the count charging breaking or entering and a prison sentence of ten (10) years as to each defendant on the count charging larceny, defendants appealed.

*Attorney General Edmisten by Associate Attorney Jesse C. Brake for the State.*

*Woodson, Hudson, Busby & Sayers by Benjamin H. Bridges, III, for defendant appellant Walter Lee Fink.*

*Somers & Eagle by Kenneth L. Eagle for defendant appellant James L. Fink.*

HEDRICK, Judge.

By their first and fifth assignments of error, defendants contend the court erred in denying their timely motions for judgment as of nonsuit and in instructing the jury on the doctrine of the possession of recently stolen goods.

State v. Fink

Defendants argue (1) that the wire found in their possession was not sufficiently identified to raise an inference that it was the wire stolen from Southeastern Mobile Home Supply Corporation and (2) that the interval of time between the commission of the crime and the finding of the property in their possession was so great as to render the doctrine of the possession of recently stolen goods inapplicable.

[1] In our opinion, the evidence tending to show that Southeastern's warehouse was broken into on the night of 11 September 1974, that eighteen 1500-foot reels of "12-2" copper wire and twenty-one 2000-foot reels of "14-2" copper wire were stolen, that one of the reels of "12-2" wire had the word "scrap" penciled on it, that the defendants were found in possession of eighteen 1500-foot reels of "12-2" copper wire and eighteen 2000-foot reels of "14-2" copper wire, that one of the reels of "12-2" wire had the word "scrap" written on it in pencil, that the wire found in the defendants' possession had the same stock numbers and was manufactured by the same company as the wire which was stolen from Southeastern's warehouse, when coupled with Mr. McGee's identification testimony of the stolen wire and specifically his testimony with respect to the reel of "12-2" wire having the word "scrap" written on it, is sufficient to raise an inference that the wire found in the defendants' possession was the wire which was stolen from Southeastern Mobile Home Supply Corporation pursuant to a break-in on 11 September 1974.

"It is the general rule in this State that one found in the unexplained possession of recently stolen property is presumed to be the thief." *State v. Raynes,* 272 N.C. 488, 491, 158 S.E. 2d 351, 353 (1968). Furthermore, when it is established that a building has been broken into and entered and that property has been stolen therefrom, discovery of the property in the possession of the defendant soon after the theft raises a presumption that he is guilty of both the breaking and entering and the larceny. *State v. Lewis,* 281 N.C. 564, 189 S.E. 2d 216 (1972).

> "Whether the time elapsed between the theft and the moment when the defendant is found in possession of the stolen goods is too great for the doctrine to apply depends upon the facts and circumstances of each case. Among the relevant circumstances to be considered is the nature of the particular property involved. Obviously if the stolen article is of a type normally and frequently traded in

lawful channels, then only a relatively brief interval of time between the theft and finding a defendant in possession may be sufficient to cause the inference of guilt to fade away entirely. On the other hand, if the stolen article is of a type not normally or frequently traded, then the inference of guilt would survive a longer time interval. In either case the circumstances must be such as to manifest a substantial probability that the stolen goods could only have come into the defendant's possession by his own act, to exclude the intervening agency of others between the theft and the defendant's possession, and to give reasonable assurance that possession could not have been obtained unless the defendant was the thief. *State v. Weinstein,* 224 N.C. 645, 31 S.E. 2d 920; *State v. Holbrook,* 223 N.C. 622, 27 S.E. 2d 725. The question is ordinarily a question of fact for the jury. *State v. White,* 196 N.C. 1, 144 S.E. 299." *State v. Blackmon,* 6 N.C. App. 66, 76-77, 169 S.E. 2d 472, 479 (1969). See also, *State v. Waller,* 11 N.C. App. 666, 182 S.E. 2d 196 (1971).

[2]  In our opinion, the interval of eighteen days between the theft of the wire and the defendants' unexplained possession of it on the night of 29 September 1974—in view of the nature of the stolen property, its regular marketing channels, the defendants' recent employment at Southeastern Mobile Home Supply Corporation, and the improbability of the defendants having come into the lawful possession of 63,000 feet of copper wire weighing approximately 3600 pounds—did not render the doctrine of the possession of recently stolen goods inapplicable. We, therefore, conclude that it was not error for the trial judge to have instructed the jury with respect thereto. Furthermore, when all of the State's evidence is considered along with the inference of the defendants' guilt arising from application of the doctrine of the possession of recently stolen goods, it is clear that the evidence was sufficient to require submission of the cases to the jury and to support the verdicts. See *State v. Eppley,* 282 N.C. 249, 192 S.E. 2d 441 (1972).

Defendants have additional assignments of error which we have carefully considered and find to be without merit.

Defendants had a fair trial free from prejudicial error.

No error.

Judges BRITT and MARTIN concur.