STATE OF NORTH CAROLINA v. DENNIS RAY CARLTON

No. 758SC789

(Filed 18 February 1976)

1. Searches and Seizures § 1— warrantless search of residence — consent given

A warrantless search of defendant's residence was not unconstitutional where defendant voluntarily gave officers permission to search his home.

2. Criminal Law § 50— soil samples — expert testimony admissible

The trial court in a first degree murder and first degree rape case did not err in allowing a witness, who qualified as an expert in soil mineralogy with defendant's consent, to testify that he personally conducted soil comparison tests, to explain the nature of the process, and to testify that soil samples taken from the victim's yard bore typological and mineralogical points of conformity and similarity to soil particles lifted from defendant's clothing.

3. Criminal Law § 168— submission of lesser included offenses — benefit to defendant — no prejudicial error

In a prosecution for first degree murder and first degree rape, the trial court's submission to the jury of the lesser included offenses

of second degree murder, manslaughter, second degree rape or assault on a female in the absence of evidence to sustain those findings totally inured to the benefit of defendant and was not reversible error.

ON *certiorari* from *Rouse, Judge.* Judgment entered 19 December 1974 in Superior Court, WAYNE County. Heard in the Court of Appeals 22 January 1976.

Defendant was indicted for first-degree murder and first-degree rape. From pleas of not guilty, the jury returned verdicts of guilty of second-degree murder and second-degree rape. Defendant sought review of his trial by way of a petition for a writ of certiorari which we allowed on 14 May 1975.

Other facts necessary for decision are set out below.

*Attorney General Edmisten, by Associate Attorney Elizabeth R. Cochrane, for the State.*

*Kornegay and Bruce, P.A., by R. Michael Bruce and Robert T. Rice, for defendant appellant.*

MORRIS, Judge.

[1] Defendant first contends that the trial court erred in denying his motion to suppress as evidence articles obtained during a warrantless search of defendant's residence. We disagree.

During a voir dire examination, police officers testified that they repeatedly warned defendant that he did not have to allow this warrantless search and that defendant, while seemingly alert and in possession of his mental faculties, freely and voluntarily agreed to the search. As SBI Special Agent E. H. Cross, Jr., recalled, defendant had stated to the police that " . . . he would be more than happy to do anything he could to assist . . . [the police]." Moreover, Deputy Sheriff Robert E. Davis claimed that no promises, threats or coercion marked the search operation. After the defendant helped the investigators locate certain items, Officer Davis decided to

" . . . warn him of his rights at this point. I did that. I warned him of his rights at this time by reading his rights from the Miranda Card I have: 'You have the right to remain silent and not make any statement. Anything you say can and will be used against you in Court. You have the right to talk to a lawyer for advice before we ask you any questions and have him or any one else with you during

State v. Carlton

questioning. You have the same right to the advice and presence of a lawyer if you cannot afford to employ one and if you are indigent a lawyer will be appointed to represent you before any questions if you desire it. Do you want a lawyer?' At this time, I said 'Do you already have a lawyer?' He said, 'Yes, sir', he had a lawyer. (In response to question as to whether he asked the Defendant if he wanted his lawyer present) he said, 'No, I have already talked to my lawyer this morning.' I said, 'If you decide to answer questions now without a lawyer you will still have the right to stop answering them at any time. You also have the right to stop answering at any time until you talk to your lawyer. Do you understand each of these rights I have explained to you?' He said, 'Yes.' At this point I felt that my card would not cover the search. I also told, now I may put one thing ahead of another, but to my recollection I told the Defendant, I said, 'We want to search your house for articles that would be involved in this homicide of Melvin Sutton.' I said, 'At any time you so desire you can stop us. Tell us to stop searching your home and we will stop. You also have the right to have your lawyer here before we start searching your home and if you don't wish us to search your home without a search warrant we can't search it.' I told him we did not have a search warrant. At this time I said, 'And having these rights in mind do you wish to let us search your house at this time,' He said, 'Go right ahead. As a matter of fact I would love to help you.' I said, 'Dennis, if you would just sit here in this chair with Mr. Pennington and me and Hap Cross will look around and see what we can find.'"

The only evidence to the contrary was the voir dire testimony of the defendant, who argued he gave no permission for the search.

Our Supreme Court, speaking through former Chief Justice Parker, recognizes the " . . . well-settled law that a person may waive his right to be free from unreasonable searches and seizures. 'No rule of public policy forbids its waiver.' *Manchester Press Club v. State Liquor Com.*, 89 N.H. 442, 200 A. 407, 116 A.L.R. 1093. It has been repeatedly decided in this jurisdiction, in the United States Supreme Court, and the Courts of this Nation that one can validly consent to a search of his premises, and consent will render competent evidence thus ob-

tained." *State v. Little,* 270 N.C. 234, 238, 154 S.E. 2d 61 (1967). However, to constitute a valid consent, the concurrence must be voluntary, specific, freely offered, unequivocal, and " . . . free from coercion, duress or fraud, and not given merely to avoid resistance." *Id.* at 239.

In this case, the evidence is plenary that defendant presented no resistance to the search, actually offered open and helpful assistance to the police, and did so without any misconceptions, misapprehensions or fears. When a person, as in this case, " . . . voluntarily permits or expressly invites and agrees to the search, being cognizant of his rights, such conduct amounts to a waiver of his constitutional protection." *State v. Colson,* 274 N.C. 295, 307, 163 S.E. 2d 376 (1968), cert. denied 393 U.S. 1087. Moreover, defendant was advised of his "rights" with respect to a search of his premises even though such a warning was not legally required. *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970). There was evidence presented that defendant was afforded every opportunity to stop the warrantless search. The court found facts and concluded that defendant gave a "valid and voluntary" consent for the search, that the search and seizure were not unreasonable, and that the evidence was admissible. The findings are supported by competent evidence, and the facts found support the conclusions reached.

[2] Defendant next argues that the trial court erred in allowing SBI Chemist Dr. Otis Donald Philen to testify as to his soil comparison tests. Specifically, defendant asserts that the State failed to lay a proper foundation for the testimony. Moreover, defendant maintains that redirect examination of the chemist exceeded the scope of testimony developed on direct examination. We find no merit in these contentions.

Dr. Philen, qualified as an expert in soil mineralogy with defendant's consent, first explained that he personally conducted the soil comparison tests and he then fully detailed the nature of the process. When read contextually, it is clear that a proper foundation preceded the chemist's testimony that soil samples taken from the victim's yard bore typological and mineralogical points of conformity and similarity to soil particles lifted from defendant's clothing.

Though ostensibly new to North Carolina, this particular testimony is not necessarily unacceptable. "It seems abundantly clear that . . . there can be expert testimony upon practically

State v. Carlton

any facet of human knowledge and experience." 1 Stansbury, N. C. Evidence, § 134, p. 438 (Brandis Rev. 1973). Even assuming that this particular theory of soil analysis is of little scientific consequence, we fail to see prejudice to defendant in view of his own testimony that he in fact was on the victim's property on the night in question.

We are, of course, aware of our recent decision in *Williams v. Power Co.*, 26 N.C. App. 392, 216 S.E. 2d 482 (1975), wherein this Court held that the trial court properly excluded opinion testimony that the siltification of plaintiffs' property came from a right-of-way cut by the defendant's bulldozers. That witness purportedly had " . . . made extensive examinations of plaintiffs' property between 1969 and 1972 . . . " , and arguably could have possessed expertise with respect to that property. *Id.* at 395. Our Court, however, held that this particular witness's opinion was inadmissible because she was no " . . . better qualified to form an opinion from the facts than the jury was." *Id.* at 396. Here, the jury was not capable of comparing the intricate mineralogical composition of soil samples, and thus, we are confronted with a situation clearly distinguishable from the facts presented in the *Williams v. Power Co.* case.

Moreover, we have examined carefully the redirect examination of Dr. Philen and believe that it merely clarifies points raised during his earlier direct examination.

[3] Finally, defendant contends that the trial court erred in instructing the jury that they also could return verdicts of guilty of second-degree murder, manslaughter, second-degree rape, or assault on a female, because there was no evidence to sustain such findings. As noted at page 71 in our recent opinion in *State v. Tomlin*, 27 N.C. App. 68, 217 S.E. 2d 755 (1975), cert. denied 288 N.C. 513 (1975), "[s]ubmission of the lesser offense . . . to the jury totally inured to the benefit of the defendant. 'An error on the side of mercy is not reversible. " (Citation omitted.) This contention, therefore, is without merit. *State v. Stephens*, 244 N.C. 380, 93 S.E. 2d 431 (1956).

No error.

Judges VAUGHN and CLARK concur.