STATE OF NORTH CAROLINA v. RAYMOND PARKER

No. 8129SC384

(Filed 17 November 1981)

1. **Larceny § 7.10— possession of recently stolen property—evidence insufficient to support conviction**
    Evidence of defendant's possession of eight-track tapes approximately 19 days after they were allegedly stolen and his possession of a rifle some 30 days after it was allegedly stolen was insufficient to support defendant's conviction of larceny under the doctrine of possession of recently stolen property.

**2. Searches and Seizures § 19— issuance of search warrants—alleged errors irrelevant**

Any error in the issuance of two search warrants was irrelevant where defendant's conviction was based upon evidence seized during a warrantless search to which consent was given and not upon evidence seized pursuant to the warrants.

**3. Searches and Seizures § 13— search and seizure by consent**

A pan containing marijuana plants was lawfully seized from defendant's bedroom during a warrantless search where the search was conducted with the consent of both defendant and his father.

APPEAL by defendant from *Owens, Judge.* Judgments entered 26 September 1980 in Superior Court, HENDERSON County. Heard in the Court of Appeals 12 October 1981.

Defendant was indicted for feloniously manufacturing marijuana (#80CRS1469) and for two counts of breaking or entering and larceny (#80CRS2721 and #80CRS2722). Although the bill of indictment in case #80CRS2721 was not filed as a part of the record on appeal, we have had a copy of this bill certified to the Court and that case will also be considered on its merits, even though the appeal is subject to dismissal for failure to include the indictment in the record. Defendant was found guilty of the drug charge, but he was acquitted on the breaking or entering charges and found guilty of nonfelonious larceny of a rifle and four eight-track tapes.

The evidence for the state tends to show that on 5 February 1980, Crystal Lanning discovered that four of her eight-track tapes were missing. On 24 February 1980, Crystal mentioned to her brother Randy that her tapes were missing. After talking with him, she went to defendant's house, located beside the Lanning house, and peered into his bedroom window. She observed three of her tapes in the room. Later she went to defendant's home when he was not present and obtained the tapes from defendant's father.

Mrs. Lanning, Crystal's and Randy's mother, testified that around the end of January or first of February 1980, she discovered that the latch on the basement door had been damaged. Thereafter it was discovered that her daughter's tapes, a piggy bank containing silver, a man's ring, and a February issue of Playboy magazine were missing. On 4 March 1980, she called the Henderson County Sheriff's Department and talked with Officer Morley. Pursuant to this conversation, Morley went to de-

fendant's house to talk with him about the alleged breaking or entering and larcenies and to search defendant's bedroom.

At trial a *voir dire* hearing was conducted after defendant objected to Morley's testimony about the items he discovered in defendant's house. On *voir dire* Morley testified that he searched defendant's bedroom with the consent of both defendant and his father. When he entered the room he spotted an aluminum pan containing small plants which he believed to be marijuana. He seized the container and immediately returned to his office in order to draw up an application for a search warrant to search defendant's home. In the application, Morley indicated that he had probable cause to believe that marijuana was located at defendant's residence, because he had just observed what appeared to be marijuana plants in defendant's bedroom. As soon as the magistrate issued a search warrant, Morley returned to defendant's house. At that time he seized a bottle commonly used for smoking marijuana. He noticed a .22 caliber rifle in defendant's closet but did not seize it. On 6 March 1980, Randy Lanning discovered that his .22 caliber rifle with missing. Officer Morley was again called and informed about the missing rifle as well as other missing articles. Morley thereafter applied for a search warrant noting therein that he had probable cause to believe that a piggy bank, a gold ring, a February issue of Playboy magazine, and a .22 caliber rifle were located in defendant's home. A search warrant was issued and executed on the evening of 6 March 1980. Pursuant to this search, Morley seized a .22 caliber Marlin rifle, a February 1980 issue of Playboy magazine, two rolled joints and a Round Gold River box containing seeds. The rifle, box, and magazine were discovered in defendant's closet. Randy Lanning identified the rifle, but Mrs. Lanning was unable to identify the Playboy magazine.

At the close of the *voir dire* examination of Officer Morley, defendant moved to quash both search warrants on the basis that no probable cause was shown for their issuance. Defendant also moved to suppress any evidence obtained under the search warrants. After considering the *voir dire* evidence and making findings of fact, the trial court denied both motions. Officer Morley then repeated his *voir dire* testimony before the jury. Another deputy sheriff testified that as he was fingerprinting defendant around 6 March 1980, defendant stated, "I guess next time I'll

have to wear gloves, won't I?" He emphasized that the statement was not in response to any question posed to defendant.

Defendant's evidence tends to show that his mother was hospitalized in Cherokee, North Carolina, from 28 January until 5 February 1980, and that he stayed in Cherokee to be with his mother until the two returned home at 8:00 p.m. on 5 February. Mitchell Owen, defendant's 13-year-old friend, testified that in February 1980 he found the four tapes on the side of the road near the Lanning house. Defendant rode up on his motorcycle as Owen was examining the tapes. Owen gave defendant the tapes because he thought they had been thrown away. Defendant took the stand and testified that he found the rifle lying against a tree near his house. He denied taking anything from the Lanning house. He further denied ownership of the marijuana found in his room.

*Attorney General Edmisten, by Assistant Attorney General Kaye R. Webb, for the State.*

*Blanchard, Veazey and Thompson, by Thomas D. Thompson, and Holt, Haire and Bridgers, by Ben Oshel Bridgers, for defendant appellant.*

MORRIS, Chief Judge.

[1] Defendant first assigns error to the trial court's denial of his motion to dismiss the charges of breaking or entering and larceny. This motion was made at the close of the state's evidence. We initially point out that even though this motion was not renewed at the close of all the evidence, G.S. 15A-1446(d)(5) requires that the sufficiency of the evidence be considered on appeal. We further note that no prejudicial error could have been committed by the court's denial of the defendant's motion to dismiss the breaking or entering charges, because defendant was acquitted of these charges. Our sole task under this assignment of error is then to determine whether the trial court erred in failing to grant the motion to dismiss the larceny charges. The only evidence presented which connects defendant to the alleged crimes of larceny was his possession of the rifle and eight-track tapes. It is, therefore, evident that the state relied upon the doctrine of possession of recently stolen property to prove defendant's guilt. The application of this doctrine, when applied to

a larceny case, raises the presumption of guilt against the possessor of recently stolen property and permits the case to go to the jury. *State v. Maines*, 301 N.C. 669, 273 S.E. 2d 289 (1981). The doctrine applies when the following conditions are met:

> (1) That the property described in the indictment was stolen, the mere fact of finding one man's property in another man's possession raising no presumption that the latter stole it; (2) that the property shown to have been possessed by accused was the stolen property; and (3) that the possession was recently after the larceny, since mere possession of stolen property raises no presumption of guilt. (Citations omitted.)

*State v. Foster*, 268 N.C. 480, 485, 151 S.E. 2d 62, 66 (1966). Both conditions (1) and (2) were met. Crystal Lanning testified that she never gave defendant permission to enter the Lanning house and take her tapes. Randy Lanning gave similar testimony regarding his rifle. Each witness also positively identified his or her property. We conclude, however, that condition (3) was not met. In *State v. Blackmon*, 6 N.C. App. 66, 169 S.E. 2d 472 (1969), this Court discussed the circumstances which must be considered in deciding whether this third condition of the doctrine is satisfied:

> Whether the time elapsed between the theft and the moment when the defendant is found in possession of the stolen goods is too great for the doctrine to apply depends upon the facts and circumstances of each case. Among the relevant circumstances to be considered is the nature of the particular property involved. Obviously if the stolen article is of a type normally and frequently traded in lawful channels, then only a relatively brief interval of time between the theft and finding a defendant in possession may be sufficient to cause the inference of guilt to fade away entirely. On the other hand, if the stolen article is of a type not normally or frequently traded, then the inference of guilt would survive a longer time interval. In either case the circumstances must be such as to manifest a substantial probability that the stolen goods could only have come into the defendant's possession by his own act, to exclude the intervening agency of others between the theft and the defendant's possession, and to give reasonable assurance that possession could not have been obtained unless the defendant was the thief. *State v. Weinstein*, 224

N.C. 645, 31 S.E. 2d 920; *State v. Holbrook*, 223 N.C. 622, 27 S.E. 2d 725. The question is ordinarily a question of fact for the jury. *State v. White*, 196 N.C. 1, 144 S.E. 299.

*Id.* at 76-77, 169 S.E. 2d at 479.

In the case at bar the tapes were discovered missing on 5 February 1980. About 19 days later Crystal Lanning saw her tapes in defendant's bedroom. The rifle was discovered missing on 6 March 1980 and found in defendant's closet on the same date. The bills of indictment indicated that the two larcenies were pursuant to a breaking or entering which occurred on or about 5 February 1980. The only evidence supporting this date is the testimony of Becky Lanning that she discovered damage to her latch on her basement door "around the last of January or the first of February." The state in its brief admits that a rifle and tapes are items which are normally and frequently traded in lawful channels. They argue, though, that the items had identifying marks which made them unique; thus presenting an additional factor which strengthens the presumption of guilt. Crystal testified that her name was written on the tapes. Randy testified that his rifle contained a new silver spring. In support of this argument, defendant calls this Court's attention to the facts in *Blackmon, supra.* Defendant therein was charged with stealing a wrench. "It was a handmade tool, the like of which the mechanic who made it had never seen before or since and which over a period of years he had used only once." 6 N.C. App. at 77, 169 S.E. 2d at 479. This wrench was found in defendant's possession 27 days after the alleged breaking and entering and larceny. We held that the doctrine of possession of recently stolen property was properly applied and found no error. Our holding, though, was based upon the uniqueness of the stolen wrench as well as the fingerprint evidence against defendant. This evidence tended to establish defendant's presence at the exact time and place the wrench was stolen. In the case *sub judice*, the state relies solely upon defendant's possession of the recently stolen property. His possession of the tapes approximately 19 days after the alleged breaking or entering and his possession of the rifle 30 days after the alleged crime are not sufficient to overcome his motion to dismiss the charges of larceny. "The possession, in point of time, should be so close to the theft as to render it unlikely that the possessor could have acquired the property honestly. (Citations

omitted.)" *State v. Jackson*, 274 N.C. 594, 597, 164 S.E. 2d 369, 370 (1968). Defendant's possession of the tapes clearly does not satisfy this definition. In addition to the elapse of 19 days between the alleged breaking and entry and defendant's possession of the tapes, there is exculpatory evidence which explains his possession. He testified that a friend, Mitchell Owen, gave him the tapes. Owen corroborated this testimony by stating that he found the tapes on the ground near the Lanning house and gave them to defendant. Owen further indicated that he did not notice Crystal Lanning's name on the tapes. Crystal admitted that her name had either faded or had been erased when she obtained the tapes from defendant's father. As to the rifle, defendant merely testified that he found it leaning against a tree near his house. The 30-day interval between the alleged theft and the possession, though, does not justify an inference of guilt. Accordingly, the judgments and commitments as to the larceny convictions are reversed.

Defendant's second argument, that the court erred in denying his motion to set aside the verdicts of guilty of nonfelonious larceny, has been answered by our determination of defendant's first argument.

[2] In his third argument, defendant has alleged error in the failure of the trial court to quash the two search warrants involving defendant's residence. The first search warrant was applied for and issued after defendant and his father gave Officer Morley permission to search defendant's bedroom and after Officer Morley discovered therein a pan containing marijuana plants. Defendant's conviction of manufacturing marijuana was, therefore, based upon evidence seized during a warrantless search to which consent was given and not upon evidence seized pursuant to the first search warrant. Any alleged error as to this search warrant is irrelevant. The second search warrant was issued after Randy Lanning discovered that his rifle was missing. Because of our reversal of the judgment and commitment involving larceny of this rifle, we need not consider any alleged errors in the second search warrant.

[3] In defendant's final argument, he has cited numerous assignments of error and exceptions to allegedly inadmissible testimony. We only need to examine those assignments of error

pertaining to the charge of manufacturing marijuana. Assignment of error #13 refers to the alleged error of the trial court in admitting testimony of the pan and its contents. In assignment of error #14, defendant has excepted to the seizure of the pan and its contents. Both of these assignments of error are without merit. The state's uncontradicted evidence shows that the pan containing plants, later determined to be marijuana, was found in defendant's bedroom after both he and his father invited Officer Morley to search defendant's bedroom. A warrantless search of a defendant's home is constitutional if defendant voluntarily gives officers permission to search. *See State v. Carlton,* 28 N.C. App. 573, 221 S.E. 2d 924, *appeal dismissed,* 289 N.C. 616, 223 S.E. 2d 767, *disc. review denied,* 290 N.C. 309, 225 S.E. 2d 830 (1976).

For the failure of the state to prove beyond a reasonable doubt each fact necessary to give rise to the inference or presumption raised by the doctrine of possession of recently stolen property, the judgments in cases #80CRS2721 and #80CRS2722 must be vacated. We find no error in case #80CRS1469.

Reversed and remanded as to cases #80CRS2721 and #80CRS2722.

No error as to case #80CRS1469.

Judges ARNOLD and BECTON concur.